Submitted on record and brief February 8, accused suspended for two years
April 3, 1990

In re Complaint as to the Conduct of

## BARBARA A. RECKER,
*Accused.*

(OSB 87-116, 88-45; SC S36670)

789 P2d 663

Susan K. Roedl, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, filed the petition on behalf of the Oregon State Bar.

No appearance *contra.*

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) filed a complaint against lawyer Barbara Ann Recker (the accused) on May 4, 1988, and an amended complaint on April 26, 1989, alleging neglect of legal matters entrusted to her by two clients, intentional failure to carry out a contract of employment entered into with a client for professional services, engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, and failure to cooperate with disciplinary investigations. Although the amended complaint was personally served on the accused, the accused did not file an answer, appear before the Trial Panel or otherwise offer a defense. A hearing was held on August 25, 1989. The Trial Panel found the accused in default and proceeded to the determination of the charges. State Bar Rules of Procedure, Rule 5.8.

The Trial Panel found the accused guilty of all of the charges and ordered that the accused be suspended from the practice of law for a period of six months and one day. We review this decision as required by ORS 9.536(2).[1] The accused filed no brief and made no other appearance in this court. The Bar filed a brief urging this court to adopt the Trial Panel's findings of fact and conclusions of law, with one exception,[2] but to enhance the sanction by disbarring the accused. We review *de novo* upon the record presented to the Trial Panel. ORS 9.536(3).[3]

### DISCIPLINARY RULE VIOLATIONS

A.  *The Johnson Matter* __

On June 3, 1987, the accused was retained by an elderly woman, Alberta M. Johnson (Johnson), to prepare a

---

[1] ORS 9.536(2) provides:

"If the decision of the disciplinary board is to suspend the accused attorney from the practice of law for a period of longer than 60 days or to disbar the accused attorney, the matter shall be reviewed by the Supreme Court. The procedure on review shall be as provided in the rules of procedure."

[2] The Bar did not agree with the Trial Panel's finding that the accused violated DR 7-102(A)(5) in the Stricker matter. See discussion, *infra,* at 638.

[3] ORS 9.536(3) provides:

"When a matter is before the Supreme Court for review, the court shall consider the matter de novo and may adopt, modify or reject the decision of the disciplinary board in whole or in part and thereupon enter an appropriate order."

will. Johnson gave the accused several documents concerning funeral arrangements, including her existing will, and paid the accused $100 in advance for preparation of the new will. The accused never prepared Johnson's will or contacted Johnson again. Johnson repeatedly telephoned the accused's office. Although Johnson was assured by the person answering the telephone that the accused was receiving her messages, the accused failed to return the calls. In October 1987, Johnson retained new counsel to represent her and sent a letter of complaint to the Oregon State Bar. Johnson never recovered her original will, her documents, or her $100.

The uncontroverted evidence is clear and convincing that the accused violated Oregon State Bar Code of Professional Responsibility Disciplinary Rules DR 6-101(B) and DR 7-101(A)(2). DR 6-101(B) commands that "[a] lawyer shall not neglect a legal matter entrusted to the lawyer." DR 7-101(A)(2) forbids a lawyer to intentionally "[f]ail to carry out a contract of employment entered into with a client for professional services * * *." The accused's failure to respond to Johnson's efforts to contact her, her unexplained failure to take action on an apparently simple legal matter, and her ignoring Johnson's request for return of documents are violations of these disciplinary rules. We affirm the Trial Panel's finding that the accused violated DR 6-101(B) and DR 7-101(A)(2) in the Johnson matter.

B. *The Stricker Matter*

On February 11, 1988, the accused was appointed by the Multnomah County District Court to represent an indigent defendant, Philip Stricker (Stricker) on a criminal charge. While Stricker's criminal trial was pending, he was released to the Burnside Projects Correction Case Management Program (Burnside Projects). In cooperation with the Multnomah County corrections office, Burnside Projects provides third-party supervision of accused persons released into the community in order to assure that defendants return to court for all necessary proceedings. The accused was notified in writing that Burnside Projects was monitoring Stricker. The program's director testified that Burnside Projects normally learns of a defendant's court date from the defendant's lawyer. Although Stricker did not have a home where he could

be contacted, Burnside Projects' staff monitored his whereabouts by requiring that Stricker check in with them several times a week. On 12 occasions from February 17, 1988, through April 18, 1988, Burnside Projects' case management staff attempted to reach the accused by telephone and left messages indicating that they were calling on behalf of Stricker. The accused did not return any of these calls. The accused did not advise Burnside Projects that Stricker was required to appear in court on April 18, 1988. Neither the accused nor Stricker appeared at the April 18 hearing. Stricker's failure to appear resulted in a bench warrant for his arrest. After the Burnside Projects director appeared in court with Stricker on April 21, 1988, and explained to the court that the accused had failed to make any contact with Stricker, the judge withdrew the bench warrant.

We affirm the Trial Panel's finding that the accused violated DR 6-101(B). The accused neglected Stricker's defense entrusted to her by the Multnomah County District Court through appointment as counsel. She failed to respond to numerous telephone messages from the Burnside Projects staff. The messages to the accused that she could contact Stricker through Burnside Projects were adequate to give the accused a means of contacting her client.

The Trial Panel also found the accused guilty of violating DR 1-102(A)(3) and DR 7-102(A)(5). DR 1-102(A)(3) states: "It is professional misconduct for a lawyer to * * * [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation." The Trial Panel found that the accused falsely informed the trial court that Stricker had failed to maintain contact with her when she herself had failed to maintain contact with Stricker. The evidence of this falsehood was the testimony of Katherine Kadderly, a social worker at Burnside Projects who was involved in monitoring Stricker. Kadderly testified that she was present at the Multnomah County District Court on April 18, 1988, when the court issued a bench warrant for Stricker's arrest based on his failure to make a court appearance scheduled for that day. Kadderly told the Trial Panel that she heard the clerk of the court advise the judge that the accused "had telephoned in, that her client had not been in contact with her. * * * And [the] Judge * * * issued a bench warrant."

We affirm the Trial Panel's finding that the Bar has proven, by clear and convincing evidence, that the accused violated DR 1-102(A)(3).

As previously noted, the Trial Panel found the accused guilty of violating DR 7-102(A)(5) based upon her false statement to the court that Stricker had not maintained contact with her. The Bar, in its brief to this court, now questions the correctness of that finding because the accused's false statement to the court was designed to advance her own interests, rather than those of her client, Stricker. Whether the accused's false statement to the court is a violation of DR 7-102(A)(5) need not be resolved in this proceeding. Such misconduct by the accused, as discussed previously, constituted a violation of DR 1-102(A)(3). The sanction which we impose would not be enhanced if such misconduct were also a violation of DR 7-102(A)(5).[4]

## THE BAR INVESTIGATIONS

After receiving a letter of complaint from Johnson, disciplinary counsel for the Bar sent the accused a copy of the letter and requested that the accused respond by November 23, 1987. The accused failed to respond. Upon referring Johnson's complaint to the Local Professional Responsibility Committee (LPRC) on December 3, 1987, disciplinary counsel sent a certified letter to the accused urging her to cooperate with the investigation. A return receipt for this letter was signed "B.A. Recker" and returned to disciplinary counsel. The LPRC attempted to contact the accused by mail and by telephone messages, but the accused did not answer these attempts.

---

[4] DR 7-102(A)(5) provides: *"In the lawyer's representation of a client,* a lawyer shall not * * * knowingly make a false statement or fact." (Emphasis added.) The decisions of this court appear to be in conflict on the question whether the prohibition in DR 7-102(A)(5) includes a lawyer representing the lawyer's own interests. In *In re Willer,* 303 Or 241, 244, 735 P2d 594 (1987), and *In re Coe,* 302 Or 553, 567-568, 731 P2d 1028 (1988), we held that DR 7-102(A)(5) concerns conduct a lawyer might use to advance the interests of a client and that it does not apply to conduct of a lawyer that is designed to advance the lawyer's own interests to the detriment of the client. In *In re Dixson,* 305 Or 83, 750 P2d 157 (1988), and *In re Kissling,* 303 Or 638, 740 P2d 179 (1987), however, this court, without reference to *Willer* or *Coe* and without discussion of the issue, found lawyers guilty of violating DR 7-102(A)(5) by knowingly making false statements, although those false statements were made to the detriment of their respective clients. *See also In re Glass,* 308 Or 297, 779 P2d 612 (1989), *recons den* 309 Or 218, 784 P2d 1094 (1990).

Shortly after the LPRC's unsuccessful attempts to contact the accused regarding the Johnson matter, the accused was appointed to represent Stricker. On April 22, 1988, the Bar's disciplinary counsel received a complaint from Burnside Projects regarding the conduct of the accused with respect to Stricker's defense. Once again, disciplinary counsel and the LPRC attempted repeatedly to contact the accused by mail and by telephone messages, but she did not respond. Finally, a member of the LPRC issued a civil *subpoena duces tecum* requiring the accused to appear and provide documents relating to the Stricker matter. The subpoena was personally served on the accused on July 23, 1988, but she failed to appear in response to it. The Bar initiated these formal disciplinary proceedings against the accused by personally serving her with the amended formal complaint on May 15, 1989. The accused did not file an answer or otherwise respond in these proceedings.

The Bar alleges that the accused violated DR 1-103(C), which provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

The evidence is clear and convincing that the accused has violated DR 1-103(C) in both the Johnson and Stricker complaints. She did not respond to the inquiries of disciplinary counsel and the LPRC, and ignored the LPRC's subpoena. The accused has not attempted to describe her omissions as the exercise of any applicable right or privilege.

## THE SANCTION

The Trial Panel decided to suspend the accused from the practice of law for six months and one day. In the Bar's brief before this court, the Bar argued that a more severe sanction would be appropriate given the accused's apparent disinterest in these disciplinary proceedings.

We evaluate the proper sanction in light of the Standards for Imposing Lawyer Sanctions, approved by the American Bar Association in 1986 (ABA Standards). *See, e.g., In re*

*Arbuckle,* 308 Or 135, 139, 775 P2d 832 (1989). In determining the appropriate sanction for lawyer misconduct, we examine four factors: (a) the nature of the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury resulting from the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. ABA Standards at 25.

■ By neglecting two client matters and making a false statement to the court, the accused breached ethical duties owed to her clients and to the legal system. This court finds that the accused acted with conscious awareness of the nature of her conduct when she neglected the Johnson and Stricker matters. In similar cases where client matters were severely neglected, we have found that the lawyer at fault "could not have been unaware" that he was creating difficulties for his clients. *In re Arbuckle, supra,* 308 Or at 140; *In re Chandler,* 306 Or 422, 426, 760 P2d 243 (1988). The accused also acted with conscious awareness of the nature of her conduct when she advised the court that Stricker had failed to maintain contact with her. The accused intentionally failed to carry out the contract of employment she entered into with Johnson for professional services. Accordingly, we conclude that the accused acted knowingly when she engaged in conduct violating DR 6-101(B) in the Johnson case and DR 1-102(A)(3) and DR 6-101(B) in the Stricker matter. The accused's violation of DR 7-101(A)(2) in the Johnson matter involved intentional misconduct. Additionally, the accused's failure to respond to the inquiries of disciplinary counsel and the LPRC, and ignoring the LPRC's subpoena, demonstrate intentional misconduct in violation of DR 1-103(C).

The accused's conduct caused injuries to both of her clients. Johnson lost her original will, her documents, and her $100. By her actions, the accused put her client, Stricker, at risk of being arrested for failure to appear at court. Although he was not arrested, Stricker was saved only by the coincidental good fortune of having an alert Burnside Project staff member present in the courtroom on a different matter when the accused's false communication to the court was announced to the judge.

Aggravating factors existing in this disciplinary proceeding are multiple offenses, ABA Standard 9.22(d); vulnerable victims, ABA Standard 9.22(h); and indifference to

making restitution, ABA Standard 9.22(j). The only mitigating factor present is the absence of a prior disciplinary record for the accused. ABA Standard 9.32(a).

The accused clearly violated several rules of professional conduct involving neglect, dishonesty and failure to cooperate with disciplinary investigations. In *In re Arbuckle, supra,* 308 Or 135, we imposed a two-year suspension upon a lawyer who engaged in conduct that was similar to the accused's conduct in the Johnson matter. Mr. Arbuckle undertook a client matter and subsequently refused to respond to the client's telephone calls and letters for a period of two years. He failed to return several important documents the client had provided for his use in the case, which resulted in this court finding a violation of DR 9-101(B)(4). *Id.* at 137-138. Mr. Arbuckle, as the accused in this proceeding, failed to acknowledge or respond to any requests or inquiries by the Bar in connection with its investigation of the client's complaint. *Id.* at 138. Consequently, we found him guilty of DR 1-103(C). 308 Or at 139.

In *In re Chandler, supra,* we imposed a two-year suspension upon a lawyer as a result of that lawyer's inaction on a client matter, including his failure to return the client's telephone calls over a three-year period, his delay in forwarding the client's file to the replacement lawyer, and his failure to cooperate with the Bar investigation or inquiries from the State Lawyers Assistance Committee. In *Chandler,* aggravating factors were two prior disciplinary proceedings and a pattern of neglect.

We conclude that the accused's professional misconduct calls for a suspension from the practice of law for a period of two years. The accused is, therefore, suspended from the practice of law for a period of two years commencing on the effective date of this decision.[5] The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).

---

[5] Reinstatement is subject to the provisions of BR 8.1.