Submitted on record and briefs October 14, accused is disbarred December 29, 1994

## In re Complaint as to the Conduct of

# JAY W. WHIPPLE,
*Accused.*

(OSB 91-174, 91-175, 92-23, 92-24, 93-55, 93-57; SC 29728)

886 P2d 7

Martha M. Hicks, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, and Mark P. Bronstein, Bar Counsel, Portland, for the Oregon State Bar.

No appearance *contra.*

PER CURIAM

## PER CURIAM

In this disciplinary case, the Oregon State Bar received complaints concerning the accused's handling of legal matters involving several different clients. The Bar thereafter brought the present proceeding against the accused, charging 23 violations of the Code of Professional Responsibility. The most serious charges are that the accused violated Disciplinary Rule (DR) 1-102(A)(3)[1] in several instances. A trial panel of the Disciplinary Board found the accused guilty of 16 violations of the disciplinary rules, including three violations of DR 1-102(A)(3) by dishonestly and intentionally appropriating clients' funds to his own use before the fees had been earned. The trial panel's decision was that the accused be disbarred.

■       Because the trial panel imposed a sanction of disbarment, this review is automatic. Rule of Procedure (BR) 10.4. The Bar must prove a disciplinary violation by clear and convincing evidence. " 'Clear and convincing evidence means that the truth of the facts asserted is highly probable.' " *In re Johnson*, 300 Or 52, 55, 707 P2d 573 (1985). We review *de novo*, ORS 9.536(2), (3); BR 10.6.[2]

After *de novo* review, we find that the accused is guilty of three violations of DR 1-102(A)(3) (dishonesty or misrepresentation). We also find that the accused is guilty of six violations of DR 1-103(C) (duty to cooperate);[3] two violations of DR 9-101(A) (trust account);[4] and one violation each

---

[1] DR 1-102(A)(3) provides:

"It is professional misconduct for a lawyer to:

"* * * * *

"Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[2] The trial panel found the accused not guilty of seven violations of the disciplinary rules alleged in the Bar's complaint. The Bar does not seek review of those findings. Although we consider the matter *de novo* and may adopt, modify, or reject the decision of the trial panel in whole or in part, in the circumstances of this case and in the light of the other serious charges of which we find the accused guilty, we choose not to review the charges of which trial panel found the accused not guilty.

[3] DR 1-103(C) provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

The Bar charged the accused with six violations of DR 1-103(C) (duty to cooperate).

of DR 3-101(B) (unlawful practice of law)[5] and *former* DR 9-101(B)(4) (prompt delivery of property which client is entitled to receive).[6] We disbar the accused.

## FINDINGS AND CONCLUSIONS

### A. Bonnell

█      In April 1991, Bonnell retained the accused to represent her in an adoption proceeding. There was no written fee agreement.[7] Bonnell paid the accused $250 on May 17 and $250 on May 21. The accused did not deposit any of the money in his trust account but, instead, put it in his general account.[8] The accused researched the adoption issues

---

Before the trial panel, the accused admitted those violations. The trial panel found the accused guilty of six violations of DR 1-103(C). We agree.

[4] DR 9-101(A) provides:

"All funds of clients paid to a lawyer or law firm, including advances for costs and expenses and escrow and other funds held by a lawyer or law firm for another in the course of work as lawyers, shall be deposited and maintained in one or more identifiable trust accounts in the state in which the law office is situated. Trust accounts shall be specifically identified by use of the phrase 'Lawyer Trust Account.' No funds belonging to the lawyer or law firm shall be deposited therein except as follows:

"(1) Funds reasonably sufficient to pay account charges may be deposited therein.

"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."

[5] DR 3-101(B) provides:

"A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction."

[6] *Former* DR 9-101(B)(4) provided:

"A lawyer shall:

"Promptly pay or deliver to a client as requested by the client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive. * * *."

*Former* DR 9-101(B)(4) has since been replaced by current DR 9-101(C)(4).

[7] Although this court never has said that a fee agreement must always be in writing, we believe that it is beneficial to reduce to writing the understanding of the parties regarding the fee, particularly when it is contingent. *See In re Potts/ Trammel/Hannon*, 301 Or 57, 74-75 n 8, 718 P2d 1363 (1986) (so indicating).

[8] *See* DR 9-101(A) (trust account); *In re Phelps*, 306 Or 508, 513, 760 P2d 1331 (1988) (failing properly to deposit or maintain funds in a trust fund is a "strict

involved and drafted a petition. He did not send the draft to Bonnell for review and did not file the petition. After Bonnell was unsuccessful in her attempts to locate the accused, she filed a complaint with the Bar.

The Bar charged the accused with violations of DR 1-102(A)(3) (dishonesty); and DR 9-101(A) (trust account).

The accused argued before the trial panel that the money paid by Bonnell was a nonrefundable fee, which was earned when paid, and that, in any event, he had done sufficient work according to his time records to have earned $500 when the second payment was received on May 21. Thus, he argued, his keeping the money did not violate either DR 1-102(A)(3) or DR 9-101(A). The accused testified that he had advised Bonnell that his rate was $90 an hour. Bonnell testified that she and the accused did not discuss whether the money was a nonrefundable fee and that hourly rates were never discussed.

In finding the accused guilty of violating DR 1-102(A)(3) and DR 9-101(A), the trial panel found:

> "The accused's defense that he was not required to deposit the funds into his trust account since they were nonrefundable fees is not supported by the evidence. The accused had no written agreement to that effect, and Bonnell denies that she was ever told it was a nonrefundable fee. The Trial Panel finds that it was not a nonrefundable fee and therefore should have been deposited into the trust account and removed from the account as earned.

> "The accused further states that he earned the funds and therefore [that he] is not guilty of converting the trust funds before they were earned. The monies were received on May 17 and May 21, and according to the accused's time records, on May 21 he had not earned $500, but in fact to that date had only earned $216, and even on June 24, he had only earned $322."

In *In re Phelps*, 306 Or 508, 512-13, 760 P2d 1331 (1988), this court explained:

> "[I]t is important to distinguish between a charge of dishonesty by misappropriation under DR 1-102(A)(3) and a charge of failing to maintain funds in a trust account under DR

liability" offense), citing *In re Mannis*, 295 Or 594, 596-97, 668 P2d 1224 (1983).

9-101(A). Though conduct leading to the latter charge often precedes conduct leading to the former charge, the two are not the same. A lawyer may remove money from a trust account (a violation of DR 9-101(A)) before intentionally appropriating that money for the lawyer's own purposes (a violation of DR 1-102(A)(3)), but removal of money from a trust account does not necessarily constitute an intentional misappropriation. The difference between the two is reflected in the sanctions. If the Bar can prove a lawyer is guilty of dishonesty by intentionally appropriating clients' funds to the lawyer's own use, the sanction is disbarment." (Footnote omitted.)

Considering that there was no written fee agreement providing that Bonnell's money was nonrefundable, and in the light of Bonnell's testimony, we agree with the trial panel that the accused's defense, *viz.*, that he was not required to deposit the funds in his trust account, because they were nonrefundable, is not supported by the evidence in the record. We find that the accused had not earned the fees at the time that the funds were received. The accused did not argue that he lacked the requisite intent to convert the money to his own use. *See Id.* at 514 (discussing concept of "innocent conversion" of client money where, due to bad recordkeeping, *etc.*, lawyer does not know that the money has not been earned); *In re Holman*, 297 Or 36, 57-58, 682 P2d 243 (1984) (discussing intent element of *former* DR 1-102(A)(4)). We find that the Bar has established by clear and convincing evidence that the accused violated DR 1-102(A)(3) (dishonesty) by intentionally appropriating Bonnell's funds to his own use when he knew that he had not yet earned the funds. *See id.* at 57-58 (holding that a lawyer who holds money in trust for another and converts that money to his own use has engaged in conduct "involving dishonesty" within the meaning of *former* DR 1-102(A)(4)). Likewise, we also find that the same conduct violated DR 9-101(A)(2) (trust account).

### B. Giberson

Giberson was on vacation in Oregon trying to settle his mother's estate and to resolve a problem that he had with his sister, who was living in his deceased mother's home. He consulted with the accused in July 1991, and was quoted a rate of $90 per hour, but no agreement concerning fees was reached. There was no written fee agreement, and Giberson

paid no money to the accused at that time. On October 1, 1991, Giberson sent $500 to the accused, which the accused deposited into his trust account and withdrew within a week. The accused's time records indicate that, before October 1, 1991, he spent 8.1 hours working on Giberson's legal matters. Much of that time was involved with the question of Giberson's sister, who was living in the home of Giberson's deceased mother, and how to remove the sister from the home. Other time was spent in drafting a petition for the probate. By October 1, 1991, at his quoted rate of $90/hour, the accused would have been entitled to receive $729 from Giberson. There was a sharp conflict in testimony concerning the communication between Giberson and the accused. The accused testified that Giberson agreed to send him $1,000, of which he received only $500. Giberson testified that he sent the accused $500 unsolicited in order to encourage him to process the probate. Giberson also indicated that he expected his sister to pay the accused's fees. No work was done on the estate between October and December. When Giberson could not contact the accused, he hired another lawyer.

In December 1991, Giberson, through his new lawyer, requested that the accused return his $500 and Giberson's documents, which included his mother's will. The accused failed to return the money and the documents promptly. The Bar received a complaint from Giberson's new lawyer concerning the accused's conduct, which it forwarded to the accused for a response. The accused made no response.

The Bar charged the accused with a violation of *former* DR 9-101(B)(4) (prompt delivery of property which client is entitled to receive). The accused admitted the violation. We agree with the trial panel that the accused violated *former* DR 9-101(B)(4) in the Giberson matter.

■ The Bar also charged the accused with violations of DR 6-101(B) (neglecting a legal matter) and DR 7-101(A)(2) (failing to carry out a contract of employment). The trial panel found that the accused violated DR 6-101(B) and DR 7-101(A)(2) by failing to take any action in the Giberson case between October and December 1991 and by failing to contact Giberson or to provide a method by which Giberson could contact him during that period. For the reasons that follow, we disagree.

In *In re Recker*, 309 Or 633, 636, 789 P2d 663 (1990), a lawyer was retained to draft a will, never did so, never had any contact with the client after the initial meeting, and never returned the client's telephone calls despite assurances to the client by the person answering the lawyer's telephone that the lawyer was receiving the messages. That conduct continued for four months, until the client retained another lawyer to handle the matter. *Ibid.* In *Recker*, this court stated:

> "The accused's failure to respond to [the client's] efforts to contact her, her unexplained failure to take action on an apparently simple legal matter, and her ignoring [the client's] request for return of documents are violations of [DR 6-101(B) and DR 7-101(A)(2)]." *Ibid.*

Here, the accused had one telephone contact with Giberson after the initial consultation, took certain actions on Giberson's behalf, and prepared a probate petition. The accused explained that the two-month period during which he took no action on the Giberson matter included the time during which he was suspended from the practice of law for nonpayment of his Professional Liability Fund assessment, and that he was waiting to hear from Giberson and to receive additional fees. Apparently there was some confusion as to who was to pay those additional fees. Giberson testified that he had arranged for his sister to do so and, on discovering that she had not, he attempted to contact the accused. Although Giberson testified that he was unable to contact the accused by telephone, he did not provide any specific information about the number of times or the dates on which he attempted to contact the accused. Unlike in *Recker*, the period of the accused's inaction was relatively brief and his failure to take action during that period was partially explained. We conclude that the Bar has failed to establish by clear and convincing evidence that the accused violated DR 6-101(B) or DR 7-101(A)(2) in the Giberson matter.

### C. Reisinger

In July 1991, Reisinger retained the accused to advise him about creditor problems and a possible bankruptcy. There was no written fee agreement. In early August, Reisinger gave the accused $570, which the accused did not deposit in his trust account. Reisinger later complained to the Bar about the accused's conduct.

The Bar charged the accused with violations of DR 1-102(A)(3) (dishonesty); and DR 9-101(A)(2) (trust account).

As in the Bonnell case, the accused argued before the trial panel that the money paid by Reisinger was a nonrefundable fee, which was earned when paid. Thus, he argues, his keeping the money did not violate either DR 1-102(A)(3) or DR 9- 101(A).

The trial panel found:

> "[T]he accused has violated [DR 1-102(A)(3) and DR 9-101(A)(2)]. His only defense appears to be that these were in fact nonrefundable fees. Even though the Bar is required to prove its case by clear and convincing evidence, the accused has no written agreement indicating nonrefundable fees, and where the only evidence in the case of their being nonrefundable is his statement, the trial panel cannot find they were nonrefundable. They were required to be deposited in the client's trust account unless all of the funds were owed to the accused at the time they were paid. The accused [*sic*] time records * * * show that on the date the check was received from the client, the accused had only done at most about 1.6 hours of work for the client, which at most would have translated into $145 fees owing at that time."

For the reasons that follow, we are not persuaded that the Bar has established by clear and convincing evidence that the accused violated DR 1-102(A)(3) or DR 9-101(A) in the Reisinger matter.

Reisinger did not testify before the trial panel, and his complaint to the Bar is not part of the record here. Other than the testimony of the accused, the record before us is devoid of any evidence pertaining to the nature of the fee agreement in the Reisinger matter. As noted, there was no written fee agreement. The accused testified that he told Reisinger that he would charge "at least $450 and the filing fee, which is $120," which needed to be paid "up front," and that, if he had to spend additional time on the case, he would bill Reisinger $90 per hour for that time.

■■ To establish the alleged violations of DR 1-102(A)(3) (dishonesty) and DR 9-101(A)(2) (trust account), the Bar must demonstrate by clear and convincing evidence that the

accused dishonestly and intentionally appropriated Reisinger's money to his own use before he had earned it and that he was required to deposit Reisinger's money in his trust account but failed to do so. *In re Phelps, supra,* 306 Or at 513. From the evidence in the record, we are unable to find that the accused agreed to charge $90 per hour for *all* his work for Reisinger, as the trial panel concluded. Also, we do not have sufficient information to determine when the fee was earned. Thus, the trial panel's conclusion that Reisinger's $570 was unearned at the time the accused received it is not supported by clear and convincing evidence in the record.

### D. Owens

In September 1991, Owens retained the accused to probate the estate of her father. Owens was the personal representative of the estate. There was no written fee agreement. On October 1, Owens gave the accused a $500 check, which he deposited in his trust account. The accused immediately withdrew $370 to pay his rent. At the time that he withdrew those funds, the accused knew that he had not earned them. Owens' check was dishonored, due to insufficient funds. About a week later, Owens gave the accused a second $500 check, which he cashed. In November, the accused deposited $63 in his trust account on Owens' account.

On October 11, 1991, the accused was suspended from the practice of law for failure to pay his Professional Liability Fund premium. Between October 11 and November 5, 1991, the date when he was reinstated, the accused had four contacts with Owens or her husband about the probate. Although those contacts were recorded on the accused's time sheets that were submitted later to the probate court, the accused did not bill Owens for any time spent on the probate matter during the period of his suspension. After he was reinstated, the accused continued working on the Owens probate, which he eventually completed. Owens later complained to the Bar about the accused's conduct.

The Bar charged the accused with two violations of DR 1-102(A)(3) (dishonesty and misrepresentation); and with violations of DR 9-101(A) (trust account) and DR 3-101(B) (unlawful practice of law).

The accused argued that he could not have misappropriated Owens' money, because Owens' first check was dishonored due to insufficient funds and, in any event, that he had earned $500 when he cashed Owens' second check.

The trial panel found that, after the accused deposited Owens's first $500 check in his trust account, he immediately withdrew $370 to pay his rent and that, at the time that he withdrew the $370, he knew or should have known that he had not earned that amount of fees. The trial panel explained:

"[T]he fact that the check was returned for insufficient funds has nothing to do with the finding that the accused violated the disciplinary rules. At the time he took those funds from the trust account, he knew or should have known that he had not earned them and had no way of knowing that the funds were not on deposit."

The trial panel then stated:

"There is a direct conflict in testimony between the witnesses and the accused as to what took place in communication during the suspension. A review of the time records shows that during the suspension period, the accused had four contacts involving this case. On October 22, 1991, he met with the personal representative at his office and held a conference for half an hour. On October 23, 1991, he talked to the personal representative's husband, which is designated 'follow-up,' for almost two hours. On October 24, 1991, there was a telephone conference with the personal representative for approximately 20 minutes and another telephone call to the personal representative on November 1, 1991 for approximately 6 minutes.

"It is clear those contacts took place during the period in which the accused was suspended for failure to pay his professional liability premiums. It is further reflected in the fact that he indicated the records on his statement filed on the estate for probate, indicating no charge. If the accused rendered no legal services to the Owens, then there would have been no reason to include that time on the time sheets submitted to the Probate Court. Whether it was being charged for or not, it is difficult for the Trial Panel to see how the accused could have spent almost two hours talking to Jim Owens without something to do with the estate significant enough to include on the time records and not to have been practicing law."

The trial panel found that the Bar sustained its burden of proof as to DR 3-101(B) and that the accused violated the rule. The trial panel also found the accused guilty of violating DR 1-102(A)(3) (dishonesty) and DR 9-101(A) (trust account).

■     We choose not to decide whether the accused violated DR 1-102(A)(3) (dishonesty) in his handling of the first Owens check, which was dishonored, because we conclude that he violated DR 1-102(A)(3) (dishonesty) when he cashed the second Owens check and appropriated the unearned portion of that money to his own use knowing that he had not yet earned it. We agree with the trial panel that the accused violated DR 1-102(A)(3) and DR 9-101(A)(2) in the Owens matter.

The Bar also charged that the accused violated DR 1-102(A)(3) (misrepresentation) by failing to tell the Owens that he was suspended from the practice of law when he met with them on October 22, 1991. Although the trial panel's opinion did not address that charge, the Bar requests that we do so.

■     When he communicated with Owens and her husband about the probate matter, the accused knew that he was suspended from the practice law. He did not inform the Owens of that fact. We conclude that the accused's intentional failure to disclose his status to Owens was a misrepresentation of a material fact that violated DR 1-102(A)(3). *See In re Boardman*, 312 Or 452, 456-57, 822 P2d 709 (1991) (misrepresenting material fact); *In re Hiller and Janssen*, 298 Or 526, 533-34, 694 P2d 540 (1985) (misrepresentation can include nondisclosure of material fact).

The Bar charged the accused with a violation of DR 3-101(B) (unlawful practice of law) because of his communications with Owens about the estate during the period when he was suspended from the practice of law. The accused argued that the communications with the Owens did not constitute practice of law, notwithstanding that they were recorded on his time records that later were submitted to the probate court indicating that he had worked on the case. Owens and her husband each testified that the probate and her duties as personal representative of the estate were

discussed during the communications. We agree with the trial panel that the accused violated DR 3-101(B) in the Owens matter.

## SANCTION

In determining the appropriate sanction for the multiple violations of the disciplinary rules in this case, this court looks to the American Bar Association's Standards for Imposing Lawyer Sanctions (1991) and Oregon case law. This court considers the ethical duty violated, the lawyer's mental state, the actual or potential injury, and the existence of aggravating and mitigating circumstances. *In re Spies*, 316 Or 530, 541, 852 P2d 831 (1993).

In this proceeding, we have found the accused guilty of dishonesty by intentionally appropriating clients' funds to his own use in the Bonnell and Owens matters. Although we recognize that the facts in this case differ from the following cited cases, at least in degree, generally, a single act of intentional and dishonest appropriation of a client's trust funds in violation of DR 1-102(A)(3) warrants disbarment. *In re Phelps, supra*, 306 Or at 512-13; *In re Holman, supra*, 297 Or at 56; *In re Thomas*, 294 Or 505, 527, 659 P2d 960 (1983); *In re Pierson*, 280 Or 513, 518, 571 P2d 907 (1977). ABA Standard 4.11 states: "Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." We also have found the accused guilty of a violation of DR 1-102(A)(3) (misrepresentation) in the Owens matter.

We have found the accused guilty of two violations of DR 9-101(A) (trust account). ABA Standard 4.12 indicates that suspension may be an appropriate sanction where a lawyer knew or should have known that he or she was dealing improperly with client property, and there is injury or potential injury to the client.

We have found the accused guilty of unauthorized practice of law, DR 3-101(B). ABA Standard 7.2 indicates that suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system. Unauthorized practice of law always has the potential to cause injury to the legal system.

We have found the accused guilty of failing to deliver promptly property that the client is entitled to receive, DR 9-101(B).

We have found the accused guilty of six counts of failure to cooperate with the Bar's investigation of the complaints involved in this proceeding, DR 1-103(C). *See In re Hereford*, 306 Or 69, 74, 756 P2d 30 (1988) ("[the] responsibility of a lawyer [under DR 1-103(C)] to 'respond fully and truthfully to inquiries from * * * other authority empowered to investigate [claims of ethical violations]' is not less important than a lawyer's other responsibilities under the disciplinary rules."); *see also In re Haws*, 310 Or 741, 755-56, 801 P2d 818 (1990) (Gillette, J., concurring) (suspension is appropriate sanction for repeated unexcused violations of DR 1-103(C)).

The trial panel found:

> "The accused appears to be a decent person who over the many years of his practice had a difficult time with the business aspects of the practice of law. * * *. He has had financial difficulties to the extent that his business phones have been shut off, as well as his personal phone, and he has been unable on a number of occasions to meet his rent obligations when due. * * *. It is evident from the testimony that the accused made use of the funds from the trust account. He had severe financial problems, *i.e.* his rent was due and there were other financial difficulties. * * *"

The fact that the accused was in need of money for his office and personal expenses and that the amount of client trust funds that he appropriated to his own use was not relatively large does not alter our conclusion that the accused's wilful violations of DR 1-102(A)(3) (dishonesty) by dishonestly and intentionally appropriating his clients' funds to his own use warrant disbarment. Nor do the accused's other personal difficulties mitigate his numerous other violations of the disciplinary rules set forth above.

We note that the accused has a history of prior discipline;[9] that in addition to two violations of DR

---

[9] The accused's history of prior discipline includes a 1982 letter of admonition, a 1983 suspension for 90 days, and a 1986 suspension for 60 days with two years probation.

1-102(A)(3) (dishonesty) and another violation of DR 1-102(A)(3) (misrepresentation), there are multiple other violations of the Code; that the accused has obstructed the investigation of these six complaints by ignoring his duty to cooperate with the Bar's investigations; and that the accused has substantial experience in the practice of law. *See* ABA Standards 9.22(a), (c), (d), (e), and (i) (listing those factors as aggravating factors). The accused's cumulative misconduct dictates that he be disbarred.

The accused is disbarred.