Submitted on the record July 10, accused disbarred November 24, 1995

# In re Complaint as to the Conduct of
## DONALD DICKERSON,
*Accused.*

(OSB 94-76, 94-77, 94-78; SC S42276)

905 P2d 1140

Ann Bartsch, Acting Executive Director of the Oregon State Bar, filed the formal complaint for the Oregon State Bar.

No appearance *contra.*

PER CURIAM

## PER CURIAM

This is a *de novo* review of a lawyer disciplinary proceeding. ORS 9.536; Bar Rules of Procedure (BR) 10.1 and 10.6. The Oregon State Bar (the Bar) filed a formal complaint against the accused, charging him with multiple violations of the Code of Professional Responsibility and ORS 9.527(4) (willful deceit or misconduct in the legal profession), arising out of his handling of three clients' cases. The Bar's complaint also charged the accused with three violations of DR 1-103(C) (duty to cooperate). The accused did not respond to the Bar's complaint.

The trial panel granted the Bar's motion for an order of default, entered an order of default, deemed the allegations in the Bar's complaint to be true, and gave the parties an opportunity to submit memoranda on the issue of sanction.[1] The Bar asked that the accused be disbarred. The accused again did not respond. The trial panel thereafter rendered a written opinion disbarring the accused.[2] The accused made no appearance in this court. We allowed the Bar's motion to submit the matter on the record, without briefing or oral argument. ORAP 11.25(3)(b).

---

[1] BR 5.8(a) provides in part:

"If an accused lawyer fails to resign or file an answer to a formal complaint within the time allowed by these rules, or if an accused lawyer fails to appear at a hearing set pursuant to BR 2.4(h), the trial panel may enter an order in the record finding the accused in default under this rule. The trial panel may thereafter deem the allegations in the formal complaint to be true. The trial panel shall thereafter proceed to render its written opinion based on the formal complaint, or at the discretion of the trial panel, after considering evidence or legal authority limited to the issue of sanction."

[2] The trial panel found that the accused knowingly engaged in conduct that was a violation of the duty owed to his profession with the intent to obtain a benefit for himself and, in so doing, seriously injured clients and the legal system; that the accused knowingly failed to perform services for clients and, in so doing, caused serious injury to such clients; and that the accused knowingly converted client property and, by so doing, caused injury to clients. The trial panel further found that the accused acted with knowledge and intent with respect to the aforementioned violations; that in each alleged incident, the client was seriously injured due to a loss of money, delay in the procurement of justice, and inconvenience attendant to locating and retaining substitute counsel; and that the Client Security Fund has been required to reimburse a client because of the accused's misconduct.

We deem the allegations in the Bar's formal complaint to be true for purposes of review. We find the accused guilty of several serious violations, and we disbar him.[3]

## THE TIMMS MATTER

In its first cause of complaint, the Bar alleges:

"3.

"On or about February 10, 1993, the Accused was retained by Stephen and Krystal Timm (hereinafter 'Timms') to represent them in a visitation matter initiated by the former husband of Mrs. Timm. The Accused agreed to represent them for $1,250, which the Timms paid.

"4.

"Ten days before trial the Accused had yet to discuss the case with the Timms, and on June 8, 1993, they terminated his services and demanded the return of their file including work by a prior attorney and their $1,250 retainer. The Accused failed to return the file or the retainer.

"5.

"On June 16, 1993, the Accused promised to give his file to the Timms' new attorney, but failed to do so. The Accused finally turned the file over to the new attorney and promised to contact the Timms regarding the refund, which he has never done.

"6.

"Mrs. Timm made numerous efforts to contact the Accused regarding the return of the retainer, and on July 2, 1993, Mrs. Timms spoke with the Accused. The Accused told her that he was leaving the State but would determine how much time he had spent on the case the next day and send them a refund check. No check was received and a claim was made to the Client Security Fund which has paid out $1,250."

The Bar asserts that the foregoing conduct violated DR 1-102(A)(3) (conduct involving dishonesty, fraud, deceit,

---

[3] The trial panel found that the accused had violated several other disciplinary rules. In the light of the several serious violations of which we find the accused guilty, on *de novo* review, we choose not to review those other charged disciplinary rule violations. ORS 9.536(3) and BR 10.6 (the Supreme Court may adopt, modify, or reject the decision of the trial panel in whole or in part and thereupon enter an appropriate order).

or misrepresentation);[4] DR 6-101(B) (neglect of a legal matter);[5] DR 9-101(A) (trust account rule);[6] DR 9-101(C)(3)(duty to maintain records and to render accounts to client);[7] DR 9-101(C)(4) (duty to promptly pay or deliver funds or property which client is entitled to receive);[8] and ORS 9.527(4) (willful deceit or misconduct in the legal profession).[9]

■   The accused violated DR 1-102(A)(3) by misrepresenting to the Timms that he would contact them, refund their retainer, and return their file, which included work by a

---

[4] DR 1-102(A)(3) provides:

"It is professional misconduct for a lawyer to:

"Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[5] DR 6-101(B) provides:

"A lawyer shall not neglect a legal matter entrusted to the lawyer."

[6] DR 9-101(A) provides in part:

"All funds of clients paid to a lawyer or law firm, including advances for costs and expenses and escrow and other funds held by a lawyer or law firm for another in the course of work as lawyers, shall be deposited and maintained in one or more identifiable trust accounts in the state in which the law office is situated."

[7] DR 9-101(C)(3) provides:

"A lawyer shall:

"Maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the lawyer's client regarding them. Every lawyer engaged in the private practice of law shall maintain and preserve for a period of at least five years after final disposition of the underlying matter, the records of the accounts, including checkbooks, canceled checks, check stubs, vouchers, ledgers, journals, closing statements, accountings or other statements of disbursements rendered to clients or equivalent records clearly and expressly reflecting the date, amount, source and explanation for all receipts, withdrawals, deliveries and disbursements of funds or other property of a client."

[8] DR 9-101(C)(4) provides:

"A lawyer shall:

"Promptly pay or deliver to a client as requested by the client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive. Under circumstances covered by DR 9-101(A)(2), the undisputed portion of the funds held by the lawyer shall be disbursed to the client."

[9] ORS 9.527(4) provides:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"The member is guilty of willful deceit or misconduct in the legal profession[.]"

prior lawyer. He misrepresented that he would promptly give his file to the Timms' new lawyer. He misrepresented that he would send the Timms a refund check. He did not do any of those things.

■     The accused violated DR 6-101(B) by neglecting to prepare the Timms' case in a timely manner. *See In re Purvis,* 306 Or 522, 524-25, 760 P2d 254 (1988) (lawyer neglected to take any action for several months after being retained by client).

■     The accused violated DR 9-101(A) by failing to maintain the Timms' retainer in his trust account.

■     The accused violated DR 9-101(C)(3) and (4) and ORS 9.527(4) by failing to maintain complete records of the Timms' funds in his possession and to render appropriate accounts to them regarding those funds, and by failing promptly to pay or deliver to the Timms the funds in his possession that they were entitled to receive. *See In re Hedges,* 313 Or 618, 624, 836 P2d 119 (1992) (failure to account for and return client's fees).

## THE VIOLETTE MATTER

In its second cause of complaint, the Bar alleges:

"9.

"In January of 1993, Mr. & Mrs. Violette decided to adopt their granddaughter and hired the Accused to handle the adoption. The Accused promised to complete the matter in a timely manner, and in February of 1993 he had the child's mother sign an affidavit relinquishing parental rights. The Violettes also signed a document stating they wished to adopt [their granddaughter].

"10.

"The Accused continually assured the Violettes that everything was going well and they needed only to wait for the court system to process the case. Despite repeated attempts by the Violettes to contact the Accused thereafter, they could not do so.

"11.

"In May of 1993, the Accused told the Violettes that he needed an affidavit and $220 to file same. The Violettes paid him the $220. Several months passed with very little contact from the Accused, and in August of 1993 they were informed

that the Accused was moving to California to start a new business. The adoption had not been finalized.

"12.

"The Accused promised to return documents to the Violettes so that they could appear pro se for the adoption. The Violettes were required to hire another attorney, who attempted to contact the Accused to get the file, but the Accused failed to respond to the new attorney.

"13.

"Despite demands, no accounting for the $220 has been made and the [adoption] case was dismissed in April 1993 due to lack of activity."

The Bar asserts that the foregoing conduct violated DR 1-102(A)(3); DR 1-102(A)(4); DR 6-101(B); DR 9-101(C)(3); DR 9-101(C)(4); and ORS 9.527(4).

■     The accused violated DR 1-102(A)(3) and ORS 9.527(4) by misrepresenting the status of their case to the Violettes. *See In re Willer*, 303 Or 241, 246, 735 P2d 594 (1987) (lawyer was guilty of dishonest conduct by providing client with false reports about status of litigation).

■     The accused violated DR 6-101(B) by neglecting the Violettes' adoption matter for several months. *See Purvis*, 306 Or at 524-25 (lawyer neglected to take any action for several months after being retained by client).

■     The accused violated DR 9-101(C)(3) and (4) by failing to render an appropriate accounting of the $220 paid to him by the Violettes. *See Hedges*, 313 Or at 624 (failure to account for and return fees).

## THE MERRILL MATTER

In it third cause of complaint, the Bar alleges:

"16.

"On May 4, 1993, Ms. Merrill contacted the Accused regarding an automobile accident and the resulting injuries of February 20, 1993. On that day, she retained the Accused to represent her in the personal injury action and completed the necessary documents and medical releases and gave the Accused doctors' reports. Approximately one month after the meeting, the Accused called indicating that he was moving the case along. Several weeks later, Ms. Merrill called

and left several messages for the Accused. She made at least eight calls to the Accused without any response from him.

"17.

"During this 'lag' of communications, Ms. Merrill's physicians were expecting payment based upon the Accused's representations that he would get PIP reimbursement for the doctors. He had failed to do so. Because the bill had been unpaid, Ms. Merrill was required to discontinue treatment.

"18.

"On August 27, 1993, Ms. Merrill called the office of the Accused only to be informed that he had been fired. [Merrill] stated that she wanted her file returned, but the office staff indicated that the file was no longer there."

The Bar asserts that the foregoing conduct violated DR 6-101(B).

■ The accused violated DR 6-101(B) by failing to pursue PIP reimbursements for Merrill's doctors as he had promised. He failed to return Merrill's calls, abandoned her case without notice, and failed to make provisions for the safekeeping of her file. *See Purvis*, 306 Or at 524-25 (lawyer neglected to take any action for several months after being retained by client).

### FAILURE TO COOPERATE

In its fourth cause of complaint, the Bar alleges:

"21.

"On September 23, 1993, November 23, 1993 and November 24, 1993, Disciplinary Counsel's office informed the Accused that complaints had been filed against him. When no responses were received to those letters as requested, Disciplinary Counsel's office followed up with correspondence requesting a response and advising the Accused that if he did not respond that the matter would be referred to the LPRC in his area for investigation. Disciplinary Counsel also advised that if the Accused failed to respond he would be subject to discipline under the Code of Professional Responsibility. The Accused did not respond to any of these letters.

"22.

"In late February, 1994, Disciplinary Counsel's office was successful in reaching the Accused by telephone, and in that telephone conversation advised the Accused of the nature of

each of the above complaints and requested a response. Correspondence was again sent to the Accused confirming this conversation on February 28, 1994.

"23.

"The Accused failed to respond to the correspondence and telephone calls of Disciplinary Counsel's office and has failed to cooperate in the investigation of each of these complaints."

The Bar asserts that the foregoing conduct violated DR 1-103(C) (duty to cooperate).

■　　The accused violated DR 1-103(C) as to each of the three causes of complaint noted above. After being notified personally by the Bar that he was the subject of a disciplinary investigation, the accused failed to respond to inquiries from disciplinary counsel. The accused has not asserted that any applicable right or privilege excused his failure to respond. *See In re Haws*, 310 Or 741, 750, 801 P2d 818 (1990) (failure to respond to inquiries from disciplinary counsel violated DR 1-103(C)); *In re Recker*, 309 Or 633, 638-39, 789 P2d 663 (1990) (same).

## SANCTION

■■ In determining the appropriate sanction for ethical misconduct, this court looks to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (ABA Standards), and Oregon case law. *See In re Spies*, 316 Or 530, 541, 852 P2d 831 (1993) (so stating). The court considers (1) the ethical duty violated, (2) the lawyer's mental state, (3) the potential or actual injury caused by the misconduct, and (4) the existence of aggravating or mitigating factors. ABA Standard 3.0; *In re Whipple*, 320 Or 476, 488, 886 P2d 7 (1994).

■　　In determining the nature of the ethical duty violated, the standards assume that the most important ethical duties are those obligations that a lawyer owes to clients. ABA Standards at 5. The accused violated the most basic of duties that a lawyer owes to clients: the duty to be truthful. He repeatedly engaged in deceit and misrepresentation directed toward his clients. *See* ABA Standard 4.6 (lack of candor). By misrepresenting the status of cases to his clients, the accused engaged in dishonest conduct. *Willer*, 303 Or at 249. By telling the Violettes in May 1993 that he needed

$220 to file an affidavit in their adoption case when the case had already been dismissed for lack of activity, the accused was guilty of misrepresentation and dishonesty. The accused also violated his duty to his clients by failing to preserve their property, by neglecting their legal matters and, ultimately, by abandoning his practice without making arrangements for his clients' interests to be protected. *See* ABA Standard 4.4 (lack of diligence); *In re Biggs*, 318 Or 281, 295, 864 P2d 1310 (1994) (recognizing similar duties). By misrepresenting his intentions to issue refunds to his clients, the accused violated his duty to maintain the standards of personal integrity on which the public relies. The maintenance of those standards is critical to public confidence in the legal system. ABA Standard 5 (duties owed to the public).

The accused acted "knowingly" regarding the abandonment and neglect issues. That is to say, we conclude that the accused acted with "the conscious awareness of the nature or attendant circumstances of the conduct." ABA Standard at 6. The accused "knowingly" converted client property.

The accused's abandonment of the Violettes and Merrill caused injury to those clients. The Violettes' adoption was delayed, and Merrill's medical treatments were discontinued. The accused's failure to account for client funds also caused injury to the Violettes and the Timms.

Finally, the accused failed to respond to inquiries from disciplinary counsel investigating the charges of professional misconduct against him.

The trial panel found no mitigating factors, and we are aware of none.

We note the presence of several aggravating factors: a prior disciplinary offense (the accused was reprimanded in 1993 for other misconduct);[10] a dishonest or selfish motive; a pattern of misconduct; multiple offenses; a failure to cooperate with disciplinary counsel's investigation of the

---

[10] The record does not disclose the nature of the accused's earlier disciplinary offense.

complaints against him; his substantial experience in the practice of law (12 years); and his indifference to making restitution. *See* ABA Standard 9.22 (a), (b), (c), (d), (e), (i), and (j) (listing those factors).[11]

ABA Standard 4.11 indicates that disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client. This court has recently stated that, generally, a single act of intentional and dishonest appropriation by a lawyer of a client's trust funds in violation of DR 1-102(A)(3) warrants disbarment. *Whipple*, 320 Or at 488.

ABA Standard 4.41(a) indicates that disbarment is generally appropriate when a lawyer abandons the practice and causes serious or potentially serious injury to a client. *See Biggs*, 318 Or at 295-96 (disbarment appropriate where lawyer's misconduct resulted in serious injuries to clients, the Professional Liability Fund, and the Client Security Fund). ABA Standard 4.41(b) indicates that disbarment is generally appropriate when a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to client. ABA Standard 4.41(c) indicates that disbarment is generally appropriate when a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA Standard 7.1 indicates that disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and

---

[11] ABA Standard 9.22 provides in part:

"Aggravating factors include:

"(a) prior disciplinary offenses;

"(b) dishonest or selfish motive;

"(c) a pattern of misconduct;

"(d) multiple offenses;

"(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

"* * * * *

"(i) substantial experience in the practice of law;

"(j) indifference to making restitution."

causes serious or potentially serious injury to a client, the public, or the legal system.

The accused lied to his clients, converted clients' funds to his own use, failed to account for clients' funds, failed to return clients' property or files, and neglected the legal matters entrusted to him by clients. Ultimately, he closed his office and moved to California without making any provision for the protection of his clients' legal interests. The accused's cumulative misconduct mandates that he be disbarred.

The accused is disbarred.