Argued and submitted November 8, accused disbarred December 6, 1996,
reconsideration denied January 14, 1997

In re Complaint as to the Conduct of

## JOHN W. MARONEY,
*Accused.*

(OSB 94-95; SC S42899)

927 P2d 90

Michael G. Hanlon, Portland, argued the cause and filed the briefs for the accused. With him on the reply brief was Keith Burns, Portland.

Mary A. Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) alleges that the accused violated DR 1-102-(A)(3) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 9-101(A) (failing to place all client funds into an identifiable trust account), *former* DR 9-101(B)(3) (current DR 9-101(C)(3)) (failing to maintain complete records of client funds), and *former* DR 9-101(B)(4) (current DR 9-101(C)(4)) (failing to pay client funds promptly when requested).

After a hearing, a trial panel of the Disciplinary Board found the accused guilty of violating those rules, as charged, and decided that disbarment is the appropriate sanction in this case. For that reason, we review that decision automatically. Bar Rule of Procedure (BR) 10.1. The Bar has the burden of establishing disciplinary violations by clear and convincing evidence, BR 5.2, and we consider the matter *de novo*, BR 10.6.

We find the following facts. The accused endorsed a $3,800 settlement check that was payable jointly to a client and to the accused, signing both his own name and the client's name.[1] He did so without the client's knowledge or consent. The client lived out of state and had no permanent address and no telephone number.

The accused did not deposit the settlement funds into his client trust account. Instead, he deposited $3,000 of that settlement into his personal bank account. He used the remaining $800 in cash to pay the mortgage on his home, which had been threatened with foreclosure. The accused then wrote checks from his personal bank account, for personal and business-related items, which depleted the remaining $3,000 of the settlement. None of those payments was for the benefit of the client, and the accused did not have the client's permission to use any of the settlement funds for the accused's own personal or business purposes.

---

[1] The accused claimed entitlement to about $600 of that amount, for attorney fees and costs.

The accused kept no ledger or other written record to account for the settlement funds. When the client eventually learned of the accused's receipt of the settlement funds, he demanded his money. The accused wrote two checks to the client on his trust account, at different times, but each was returned for insufficient funds. After the client suffered much inconvenience, but before the accused learned of a complaint to the Bar, the accused eventually repaid the client the full $3,800. The accused's course of conduct lasted for about four months.

Based on the foregoing findings, we conclude that the accused violated the disciplinary rules as charged. He violated DR 1-102(A)(3) by endorsing his client's name on the settlement check in order to be able to use the funds.[2] He violated DR 9-101(A) by placing the settlement proceeds into his personal bank account and then spending the money. He violated *former* DR 9-101(B)(3) by keeping no records to account for the settlement funds. He violated *former* DR 9-101(B)(4) by not paying the client's funds back promptly when asked to do so.

We now must determine the appropriate sanction. With respect to the sanction, we note that the accused moved the chair of the trial panel for leave to reconvene the proceeding, pursuant to BR 5.7, to consider additional mitigating evidence.[3] The chair denied that motion. The accused argues before this court that that ruling was erroneous.

We need not decide whether that ruling was erroneous because, even assuming that it was, we have the accused's offer of proof before us. In considering what sanction to impose, we have considered all the additional matters raised in the offer of proof.

In deciding on the sanction, we are guided by the American Bar Association's *Model Standards for Imposing Lawyer Sanctions* (1991) (ABA Standards). We take into

---

[2] In this court, the accused contests his guilt only with respect to the charged violation of DR 1-102(A)(3).

[3] The accused was represented by counsel at the hearing, and he does not argue that the trial panel denied him an opportunity to present mitigating evidence at that time.

account the nature of the ethical duty violated, the lawyer's mental state at the time of the violation, the extent of the actual or potential injury caused by the lawyer's misconduct, and any aggravating or mitigating circumstances. ABA Standard 3.0. We examine each of those considerations in turn.

The accused violated the most basic duty to his client by his mishandling of the client's funds. The ABA Standards state that disbarment generally is appropriate when a lawyer converts a client's funds and uses them for the lawyer's own benefit. ABA Standard 4.11. Additionally, by signing his client's name to the settlement check without the client's consent, the accused violated his duty to the public to maintain personal integrity. *See* ABA Standard 5.0 (discussing that duty).

When the accused endorsed the settlement check with his client's name, placed the funds in his own personal bank account, and spent the client's money, he acted intentionally, the most culpable mental state in this context. The ABA Standards define "intent" as "the conscious objective or purpose to accomplish a particular result." ABA Standards at 7. When the accused failed to pay the client back promptly, and his checks were returned for insufficient funds, the accused acted negligently. In the remainder of the misconduct involved here, we conclude that the accused acted at least with "knowledge," that is, with "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." *Ibid.*

In this case, there was actual injury to the client. The acts of the accused caused a substantial delay in the client's use of his own funds. Additionally, the acts of the accused caused injury to the legal profession by marring the public's trust in the integrity of lawyers.

There are aggravating factors. The accused acted from a selfish motive. ABA Standard 9.22(b). He committed multiple offenses, over a period of four months. ABA Standard 9.22(d). He had substantial experience in the practice of law, having been first admitted in another jurisdiction in 1973. ABA Standard 9.22(i).

There also are mitigating factors. The accused had no prior disciplinary record. ABA Standard 9.32(a). As revealed by the offer of proof, the accused was experiencing personal and emotional problems at the time of the misconduct.[4] ABA Standard 9.32(c). Also as revealed by the offer of proof, the accused enjoyed a good reputation. ABA Standard 9.32(g). There was full and free disclosure to the Bar and a cooperative attitude toward these proceedings. ABA Standard 9.32(e). The accused made full restitution before he knew that his misconduct had been brought to the Bar's attention. ABA Standard 9.32(d).

Notwithstanding those mitigating factors, we conclude that disbarment is the appropriate sanction. As this court said nearly 20 years ago, in a case where a lawyer borrowed $14,500 of one client's funds to pay an overdraft in another client's trust account:

> "We hold that a single conversion by a lawyer to his own use of his client's funds will result in permanent disbarment.
>
> "We have acted with complete awareness that full restitution has been made, but that cannot alter the result." *In re Pierson*, 280 Or 513, 518, 571 P2d 907 (1977).

The court has maintained that position consistently. For example, in *In re Phelps*, 306 Or 508, 760 P2d 1331 (1988), the court disbarred a lawyer who had converted funds belonging to two clients. After noting several mitigating factors under the ABA Standards, the court said:

> "A lawyer may suffer all the claimed disabilities and may have the greatest of attributes, but if he or she steals funds from a client, the sanction is disbarment." 306 Or at 520.

Additionally, in *In re Benjamin*, 312 Or 515, 823 P2d 413 (1991), a lawyer was disbarred, even though he was suffering from emotional difficulties, when he had spent $1,900 of his client's money while acting as an escrow agent and had withheld in his trust account $480 that belonged to the client. In

---

[4] The accused stated in an affidavit that his brother died in 1992, that his practice was experiencing financial difficulties, that he had marital problems, that he "began experiencing symptoms of mental depression in 1993" and began consulting with a psychologist in 1994, and that "[t]he stress of these personal and professional problems impaired my mental processes during the relevant time period."

*In re Dickerson*, 322 Or 316, 326, 905 P2d 1140 (1995), this court reiterated "that, generally, a single act of intentional and dishonest appropriation by a lawyer of a client's trust funds in violation of DR 1-102(A)(3) warrants disbarment." (Citation omitted.)

The accused intentionally converted his client's funds to his own use. He failed to account for those funds and failed to return the money to the client promptly. That course of conduct mandates that the accused be disbarred from the practice of law.

The accused is disbarred.