Submitted on the record January 25, accused disbarred May 2, 1996

In re Complaint as to the Conduct of

## DENNIS J. SOUSA,
*Accused.*

(OSB 94-85, 94-190, 94-239, 95-48; SC S42737)

915 P2d 408

Jane E. Angus, Assistant Disciplinary Counsel, waived appearance for the Oregon State Bar.

No appearance *contra*.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) asks this court to disbar Dennis J. Sousa (the accused).[1] The Bar filed a formal complaint against the accused on December 1, 1994, an amended complaint on February 20, 1994, and a second amended complaint and notice to answer on June 20, 1995. Service of the second amended complaint and notice to answer was made upon the accused by the Bar on July 1, 1995. The second amended complaint alleged 17 violations of the Code of Professional Responsibility: Disciplinary Rule (DR) 1-102(A)(3) (engaging in conduct involving dishonesty or misrepresentation) (two counts); DR 1-103(C) (failing to respond fully and truthfully to inquiries in a disciplinary investigation) (three counts); DR 2-106(A) (collecting a clearly excessive fee); DR 6-101(B) (neglecting a legal matter entrusted to a lawyer) (four counts); DR 7-101(A)(2) (failing to carry out a contract of employment) (three counts); DR 7-101(A)(3) (prejudicing or damaging a client during the course of the professional relationship); DR 9-101(C) (failing to preserve the identity of the funds and property of a client); DR 9-101(C)(3) (failing to maintain complete records of client funds coming into a lawyer's possession and render complete accounts to the client regarding those funds); and DR 9-101(C)(4) (failing to promptly pay or deliver to a client any funds in the lawyer's possession that the client is entitled to receive, upon the client's request).

The accused did not respond to any of the Bar's formal complaints. On August 3, 1995, a trial panel of the Disciplinary Board entered an Order of Default concerning the Bar's second amended complaint, which deemed the allegations contained in that complaint to be true. Rule of Procedure (BR) 5.8(a). In order to consider the appropriate sanction, the trial panel also held a hearing on that date. The accused did not appear at the hearing.

---

[1] The accused has been on suspended status since April 1995, for failure to pay his Professional Liability Fund assessment.

On September 19, 1995, the trial panel found the accused guilty of 18 disciplinary rule violations: DR 1-102(A)(3) (two counts); DR 1-103(C) (five counts); DR 2-106(A); DR 6-101(B) (three counts); DR 7-101(A)(2) (three counts); DR 9-101(C)(3) (two counts); and DR 9-101(C)(4) (two counts). The trial panel further determined that the accused should be disbarred.

Because the trial panel decided that disbarment was the appropriate sanction in this case, this court automatically reviews that decision. BR 10.1. We granted the Bar's request to submit the matter on the record without oral argument or briefing. ORAP 11.25(3)(b).

This court reviews lawyer disciplinary proceedings *de novo*. ORS 9.536(3); BR 10.6. The Bar has the burden of establishing disciplinary violations by clear and convincing evidence. BR 5.2.

■ The Bar's second amended complaint (for simplicity, hereafter referred to as "the complaint") is based upon the accused's representation of four different clients in unrelated matters, which we shall discuss in turn. For the purposes of review, because the accused defaulted, we deem the allegations contained in the Bar's complaint to be true. *In re Bourcier*, 322 Or 561, 564, 909 P2d 1234 (1996). As we shall explain below, we find the accused guilty of 16 disciplinary rule violations by clear and convincing evidence and disbar him.

■ From 1986 until 1990, the accused represented Walker, who suffered from Alzheimer's disease. In 1990, Walker executed a general power of attorney authorizing the accused to act in her behalf.[2] In August 1993, pursuant to the power of attorney, the accused sold some of Walker's real and personal property, including a 1973 Ford Thunderbird, to Ovregaard. At the time of the sale, no one could locate the title to the vehicle. The accused told Ovregaard that he would file a certificate of lost title with the Department of Transportation

---

[2] The Bar's complaint does not indicate whether Walker was capable of executing the general power of attorney. The validity of the power of attorney is not at issue in this proceeding.

Driver and Motor Vehicles Services or take other action necessary to obtain a new title in order to complete the transfer of ownership from Walker to Ovregaard. Despite repeated requests from Ovregaard, however, the accused failed to deliver any title, failed to file a certificate of lost title, and otherwise failed to take action to obtain a new title and transfer ownership of the vehicle.

In March 1994, Scott retained the accused to resolve several traffic charges pending against her in Colorado. The accused told Scott that he currently was licensed to practice law in Colorado and that he could resolve her problems with some telephone calls to various lawyers and judges in that state. At that time, however, the accused was on inactive status as a lawyer in the State of Colorado. Between March and July 1994, the accused did not respond to repeated communications from Scott and failed to resolve her traffic charges. He also never advised Scott that he currently was not authorized to practice law in Colorado. In July 1994, Scott terminated her professional contract with the accused and demanded an accounting of both the work performed and the $500 nonrefundable retainer that she previously had paid to him. The accused failed to provide an accounting or to refund any portion of Scott's retainer.

In March 1994, Chin retained the accused to resolve certain traffic charges and a possible probation violation. Chin paid the accused an $800 nonrefundable retainer. Between March and December 1994, the accused failed to respond to Chin's repeated attempts to communicate with the accused and also failed to take action on Chin's pending charges. On the one occasion when the accused did speak to Chin, near the end of May 1994, the accused stated that he was "working on the matter" when, in fact, he was not. The accused did not refund any portion of Chin's retainer.

In November 1993, Higuera retained the accused to pursue certain court actions against Higuera's employer, as well as an unemployment compensation claim. The accused failed to keep several appointments with Higuera in August and September 1994, and failed to respond to Higuera's repeated attempts to communicate with the accused between

October and December 1994. The accused also failed to complete his contract for professional services with Higuera, as explained below.

In October 1994, the defendants in one of Higuera's civil actions filed a motion to dismiss. The hearing on that motion was set for December 5, 1994. Higuera did not learn of the motion or the hearing until he checked the court docket on December 1, 1994. The accused neither objected nor responded to the motion and did not appear at the hearing on December 5, 1994.

In Higuera's unemployment compensation proceeding, the accused petitioned for judicial review following an adverse ruling by the Employment Department. However, the Court of Appeals dismissed the petition on October 25, 1994, because the accused failed to file a brief on Higuera's behalf. The accused did not notify Higuera that he had failed to file a brief or that the court had dismissed the petition.

In all four client matters, the accused failed to respond to all initial and follow-up inquiries directed to him by the Bar. In the Ovregaard and Scott matters, the accused also failed to respond to inquiries directed to him by the Local Professional Responsibility Committees (LPRCs) assigned to investigate the complaints.

■      DR 1-102(A)(3) provides that it is professional misconduct for a lawyer to "[e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation." A lawyer violates the "dishonesty" rule when the lawyer makes an expressly false statement or actively misrepresents the status of a case to a client. *In re Hiller*, 298 Or 526, 532, 694 P2d 540 (1985); *In re Dickerson*, 322 Or 316, 322, 905 P2d 1140 (1995).

The accused violated DR 1-102(A)(3) when he represented to Scott that he currently was licensed to practice law in Colorado when in fact he was on inactive status. He also violated that rule when he assured Chin that he was working on Chin's pending charges when, in fact, he was not.

DR 1-103(C) provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and

comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

By virtue of his failure to respond to any of the inquiries posed by the Bar or the LPRCs, the accused violated DR 1-103(C) in all four client matters. Although the trial panel found the accused guilty of five violations of DR 1-103(C), the allegations contained in the Bar's complaint do not support a fifth finding of guilt.

■ Turning to the "nonrefundable retainers," DR 2-106(A) provides that "[a] lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee." A lawyer violates that rule if the lawyer "collects a nonrefundable fee, does not perform or complete the professional representation for which the fee was paid, but fails promptly to remit the unearned portion of the fee." *In re Gastineau*, 317 Or 545, 551, 857 P2d 136 (1993).

In the Scott and Chin matters, the accused collected nonrefundable retainers of $500 and $800, respectively. The accused failed to take action in either matter and failed to return any portion of the retainers. Although the trial panel found the accused guilty of violating DR 2-106(A) only in the Chin matter, we see no significant difference between the accused's conduct in the Chin and Scott matters. Consequently, we find the accused guilty of two violations of DR 2-106(A).

■ DR 6-101(B) provides that "[a] lawyer shall not neglect a legal matter entrusted to the lawyer." If a lawyer fails to take action after being retained for legal services, that constitutes neglect, in violation of the rule. *In re Biggs*, 318 Or 281, 294, 864 P2d 1310 (1994). To establish violation of DR 6-101(B), "the Bar need prove only a course of negligent conduct." *In re Bourcier*, 322 Or at 567.

The trial panel found the accused guilty of three violations of DR 6-101(B), in the Scott, Chin, and Higuera matters. We agree with that finding. We also find, however, that, by failing to complete the transfer of title in the Ovregaard matter, the accused neglected "a legal matter entrusted to the lawyer" in violation of the rule in that matter, as well.

Consequently, we find that the accused violated DR 6-101(B) in all four client matters.

■ DR 7-101(A)(2) provides, in part, that a lawyer shall not intentionally "[f]ail to carry out a contract of employment entered into with a client for professional services." A lawyer's failure to act can be characterized as intentional, rather than attributed to mere neglect or procrastination, if the lawyer fails to act over a significant period of time, despite the urging of the client and the lawyer's knowledge of a professional duty to act. *See In re Loew*, 292 Or 806, 810-11, 642 P2d 1171 (1982) (rule violated when lawyer did not act for more than one year despite the urging of his client and his client's new lawyer).

In the Scott, Chin, and Higuera matters, the accused failed to perform his contract of employment for legal services over a period of several months and failed to respond to numerous attempted communications and requests for information by all three clients. We find that the accused violated DR 7-101(A)(2) in those three client matters.

■ DR 9-101(C)(3) provides, in part, that a lawyer shall "[m]aintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the lawyer's client regarding them." In the Scott matter, the accused failed to render an accounting of his unearned retainer to Scott after being requested to do so. We find that failure to provide an accounting to be a violation of DR 9-101(C)(3). *See In re Hedges*, 313 Or 618, 624, 836 P2d 119 (1992) (finding violation of *former* DR 9-101(B)(3), now DR 9-101(C)(3), when lawyer failed to provide accounting of fees previously paid after being requested to do so). Although the trial panel found the accused guilty of violating DR 9-101(C)(3) in the Chin matter as well as in the Scott matter, the allegations contained in the Bar's complaint do not support that finding in the Chin matter.

We note that the trial panel also found the accused guilty of two violations of DR 9-101(C)(4), which requires that a lawyer promptly pay to a client, as requested, the funds in the lawyer's possession that the client is entitled to receive.

However, the allegations contained in the Bar's complaint do not support those findings of guilt.

■ We now must determine the appropriate sanction. In doing so, we are guided by the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (ABA Standards). *In re Bourcier*, 322 Or at 568-69. Under those standards, we look to four considerations in order to ascertain an appropriate sanction: (1) the nature of the ethical duty violated; (2) the lawyer's mental state at the time of the violation; (3) the extent of the actual or potential injury caused by the lawyer's misconduct; and (4) any aggravating or mitigating circumstances. ABA Standard 3.0. We examine each of those considerations in turn.

In determining the nature of the duty or duties violated, the standards assume that the most important ethical duties are those that a lawyer owes to the client. ABA Standards at 5; *In re Dickerson*, 322 Or at 324. The accused violated his duty of diligence, because he failed to complete his contract for legal services in all four client matters and failed to respond to continued communications from Scott, Chin, and Higuera. *See* ABA Standard 4.4 (lack of diligence). The accused also violated his duty to be truthful, because he told Scott that he currently was licensed to practice in Colorado but, in fact, he was not, and because he misrepresented the status of Chin's case to Chin. *See* ABA Standard 4.6 (lack of candor).

The standards define "intent" as "the conscious objective or purpose to accomplish a particular result" and define "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards at 7. We find that the accused acted knowingly when he neglected his clients' legal matters and failed to carry out his contract of employment with those clients. He also acted knowingly in his failure to cooperate with the Bar's investigation. In addition, we find that the accused acted intentionally when he made dishonest statements to Scott and Chin.

The accused caused actual injury to Scott and Chin by failing to take action on their legal matters and by failing

to refund their retainers when he had not completed his contract of employment. Scott had to pay another lawyer in Colorado to resolve her pending charges after she terminated her professional contract with the accused. Chin was unable to hire a new lawyer without the $800 that he already had paid to the accused, and, at the time of the hearing before the trial panel, his pending charges had yet to be resolved.

The accused also caused actual injury to Higuera. Because of the accused's neglect and failure to act in Higuera's behalf, Higuera's petition for judicial review was dismissed in his unemployment compensation proceeding. The evidence contained in the record also shows that Higuera was ordered to pay costs in the amount of $1,141.50 in one of his civil proceedings, because the accused neither objected nor otherwise responded to a motion for fees and costs filed by the defendants' lawyers.

We find the existence of the following aggravating factors in this case: a pattern of misconduct, multiple offenses, and substantial experience in the practice of law.[3] ABA Standards 9.22(c), (d), and (i). We also find that, in making dishonest statements to Scott and Chin and in failing to return any portion of the retainers paid to him by Scott and Chin, the accused acted with a dishonest and selfish motive. ABA Standard 9.22(b). No mitigating factors exist.

ABA Standard 4.41 provides, in part, that:

"Disbarment is generally appropriate when:

"* * * * *

"(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

"(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client."

This court previously has applied that standard and imposed the sanction of disbarment for misconduct similar to that at

---

[3] The accused was admitted to practice law in Massachusetts in 1969, in Colorado in 1970, and in Oregon in 1983.

issue here. *See In re Dickerson*, 322 Or at 326-27 (disbarment appropriate when lawyer "lied to his clients, * * * failed to account for clients' funds, failed to return clients' property or files, and neglected the legal matters entrusted to him by clients").

The accused engaged in a continuous pattern of misrepresentations, neglect, failure to act in behalf of his clients, and failure to acknowledge his ethical obligations and respond to the Bar's investigation, thereby causing injury to his clients. That course of conduct mandates that the accused be disbarred from the practice of law.

The accused is disbarred.