*287
 
 PER CURIAM
 

 This is a
 
 de novo
 
 review of a lawyer disciplinary proceeding. ORS 9.536(3); Bar Rules of Procedure (BRs) 10.1 and 10.6. The Oregon State Bar (the Bar) filed a formal complaint, alleging that the accused knowingly made false statements in a “Petition for Restraining Order to Prevent Abuse,” in violation of ORS 162.065 (perjury) and ORS 162.075 (false swearing). The Bar further alleged that the accused thereby violated Disciplinary Rules (DRs) 1-102(A)(2), 1-102(A)(3), 1-102(A)(4),
 
 [1]
 
 and 7-102(A)(5).
 
 [2]
 
 The Bar also alleged that the accused violated DR 1-103(C)
 
 [3]
 
 by failing to cooperate with the investigation of the Bar and the Multnomah County Local Professional Responsibility Committee (LPRC).
 

 The accused did not respond to the Bar’s formal complaint. A trial panel of the Disciplinary Board entered an Order of Default and ordered that all allegations contained in the Bar’s complaint “are deemed admitted by virtue of this default.” The trial panel held a hearing pursuant to BR
 
 *288
 
 5.8(a).
 
 [4]
 
 The accused did not appear at the hearing.
 
 [5]
 
 The trial panel took testimony and considered legal authority but did not limit its consideration to the issue of sanction. The trial panel found that the accused had violated DR 1-102(A)(3), 1-102(A)(4), and 7-102(A)(5) by falsely alleging under oath that she had been abused by a person named Wittemyer. The trial panel further found that the accused was not guilty of violating any disciplinary rule for alleging under oath that she had lived with Wittemyer and that she was not guilty of violating DR 1-102(A)(2) for falsely stating under oath that she had been abused by Wittemyer.
 

 The Bar recommended that the accused be suspended for a minimum period of two years. The trial panel suspended the accused for a period of six months and one day and further ordered that her readmission to the Bar be conditioned on her submission of satisfactory proof from a licensed mental health practitioner that she is mentally competent to practice law.
 

 The accused did not file a brief or make any appearance in this court. We granted the Bar’s motion to submit the matter on the record without oral argument.
 
 See
 
 ORAP II. 25(3)(b) (providing procedure). We review
 
 de novo.
 
 ORS 9.536(3); BR 10.6. The Bar has the burden of establishing disciplinary violations by clear and convincing evidence. BR 5.2.
 

 In its first cause of complaint, the Bar alleges in part:
 

 “3.
 

 “On or about March 30, 1993, the Accused, on her own behalf, signed, verified and filed a Petition for Restraining
 
 *289
 
 Order to Prevent Abuse in Clackamas County Court Case No. 93-03-437,
 
 Monica Starr, Petitioner v. Reb Bennett, Respondent.
 
 A copy of this Petition is attached hereto as Exhibit 1 and incorporated by reference herein.
 

 “4.
 

 “In Exhibit 1, the Accused alleged under oath that she had been living with Reb Bennett since July, 1988.
 

 “5.
 

 “On or about June 14, 1993, the Accused, on her own behalf, signed, verified and filed a Petition for Restraining Order to Prevent Abuse in Multnomah County Circuit Court Case No. 9306-64805,
 
 Monica Staar, Petitioner v. George Wittemyer, Respondent.
 
 A copy of this petition is attached hereto as Exhibit 2 and incorporated by reference herein.
 

 “6.
 

 “In Exhibit 2, the Accused alleged under oath that she lived with George Wittemyer from December, 1992 to May, 1993, and that she had been abused by him.
 

 “7.
 

 “The representations described in Paragraph 6 related to material issues in the proceeding were false and the Accused knew them to be false when she made them in violation of ORS 162.065 and ORS 162.075.
 

 “8.
 

 “As a result of the Accused’s filing Exhibit 2, the Respondent in that proceeding was required to appear and move to dismiss the Accused’s petition.
 

 “9.
 

 “The aforesaid conduct by the Accused constituted criminal conduct that reflects adversely on her honesty, trustworthiness or fitness to practice law; conduct involving dishonesty, fraud, deceit or misrepresentation; conduct prejudicial to the administration of justice; and knowingly
 
 *290
 
 making a false statement of fact in violation of the following standards of professional conduct established by law and by the Oregon State Bar:
 

 “1. DR 1-102(A)(2);
 

 “2. DR 1-102(A)(3);
 

 “3. DR 1-102(A)(4); and
 

 “4. DR 7-102(A)(5) of the Code of Professional Responsibility.”
 

 On the basis of those allegations and the accused’s default, we agree with the trial panel that the accused is guilty of violating DR 1-102(A)(3), 1-102(A)(4), and 7-102-(A)(5). We disagree, however, with the trial panel’s findings that the accused is not guilty of violating DR 1-102(A)(2) in knowingly filling out a false petition for a restraining order and that the accused is not guilty of violating DR 1-102-(A)(2), 1-102(A)(3), 1-102(A)(4), and 7-102(A)(5), by knowingly and falsely alleging in the petition for a restraining order that she had lived with Wittemyer from December 1992 to May 1993. The trial panel entered a default order providing that all the allegations in the Bar’s complaint were deemed admitted by virtue of the accused’s default. Having entered that order, the trial panel did not have the authority to hear evidence
 
 on the merits
 
 of the allegations. Rather, the trial panel was required to limit its consideration to the issue of an appropriate
 
 sanction.
 
 BR 5.8(a). The trial panel erred in finding the accused not guilty of two of the allegations contained in the complaint based on its consideration of testimony taken at the hearing.
 

 The complaint, deemed to be true because of the accused’s default, supports a finding that the accused is guilty of violating DR 1-102(A)(2) by knowingly and falsely stating under oath that she had been abused by Wittemyer
 
 [6]
 
 
 *291
 
 and also supports a finding that the accused is guilty of violating DR 1-102(A)(2), 1-102(A)(3), 1-102(A)(4), and 7-102-(A)(5) by stating under oath that she had lived with Witte-myer from December 1992 to May 1993, knowing that allegation to be false.
 

 The fact that the accused was not acting as a lawyer when she made the false statements of fact does not affect her culpability. The Disciplinary Rules apply to the conduct of lawyers even when they are acting on their own behalf.
 
 See, e.g., In re Glass,
 
 308 Or 297, 779 P2d 612 (1989),
 
 on reh’g
 
 309 Or 218, 784 P2d 1094 (1990) (the accused violated several ethical rules, including DR 1-102(A)(3) and 7-102(A)(l), in the course of his private dispute with a contractor);
 
 In re Germundson,
 
 301 Or 656, 724 P2d 793 (1986) (lawyer who signed promissory notes on behalf of a corporation in which he had an interest, without authority to do so, violated DR 1-102(A)(3));
 
 In re Houchin,
 
 290 Or 433, 622 P2d 723 (1981) (lawyer violated
 
 former
 
 DR 1-102(A)(4) by enrolling in a college course as a student, while also teaching the same course, in order to qualify for educational benefits).
 

 In its second cause of complaint, the Bar alleges:
 

 “11.
 

 “The [Bar] received a complaint concerning the Accused’s conduct described herein on or about July 9, 1993. On July 19, 1993, the Disciplinary Counsel’s Office forwarded a copy of the complaint to the Accused and requested her response to that complaint by August 9, 1993. The Accused made no response. On August 12, 1993, Disciplinary Counsel’s Office again requested the Accused’s response to the complaint by August 19,1993. The Accused made no response.
 

 “12.
 

 “On or about September 8,1993, a member of the Mult-nomah County Local Professional Responsibility Committee (LPRC) contacted the Accused by mail requesting her
 
 *292
 
 response. The Accused made no response. On or about October 11, 1993, the LPRC member again contacted the Accused by mail. The Accused made no response.
 

 “13.
 

 “While the subject of a disciplinary investigation, the Accused failed to cooperate with the Disciplinary Counsel’s Office and the LPRC which are empowered to investigate or act upon the conduct of lawyers.
 

 “14.
 

 “The aforesaid conduct by the Accused violated the following standard of professional conduct established by law and by the Oregon State Bar:
 

 “1. DR 1-103(0 of the Code of Professional Responsibility.”
 

 We agree with the trial panel that, in failing to respond to inquiries made by the Bar and the LPRC, the accused violated DR 1-103(C).
 
 See In re Miles,
 
 324 Or 218, 923 P2d 1219 (1996) (failure to respond to inquiries from disciplinary counsel violated DR 1-103(C)).
 
 [7]
 

 In determining the appropriate sanction, we look to the American Bar Association’s
 
 Model Standards for Imposing Lawyer Sanctions
 
 (1991) (ABA Standards) and Oregon case law.
 
 See Miles,
 
 324 Or at 221 (so stating). This court considers (1) the ethical duty violated, (2) the lawyer’s mental state at the time of the violations, (3) the extent of the actual or potential injury caused by the lawyer’s misconduct, and (4) the existence of aggravating or mitigating factors.
 
 Id.-,
 
 ABA Standard 3.0.
 

 1. Ethical duty violated.
 

 The accused violated DR 1-102(A)(2), (3), (4), and 7-102(A)(5) by falsely stating under oath that she had lived with and had been abused by Wittemyer. The accused violated one of the highest duties that a lawyer owes to the legal
 
 *293
 
 system: the duty to refrain from intentionally misleading a court. Because her false statements provided the statutory basis for her ability to obtain an
 
 ex parte
 
 restraining order against Wittemyer, the accused’s conduct here was particularly egregious.
 

 2. The accused’s mental state.
 

 As alleged in the complaint, and deemed to be true by virtue of the accused’s default, the accused made false statements of fact in her petition for a restraining order, knowing them to be false.
 
 See
 
 ABA Standards at 7 (defining “knowledge”).
 

 3. The potential or actual injury caused by the accused’s misconduct.
 

 The accused’s conduct caused injury to Wittemyer, who was compelled to hire a lawyer and take action to have the restraining order dismissed. Wittemyer contested the restraining order at a hearing in which he called several witnesses to rebut the accused’s statements. The accused did not appear at that hearing, and the trial court dismissed the restraining order. Wittemyer, the witnesses, and the court all were inconvenienced as a result of the accused’s misconduct. Moreover, because the false statements potentially were defamatory, the accused’s conduct had the potential for causing greater injury to Wittemyer.
 

 4. Aggravating and mitigating factors.
 

 The trial panel found no aggravating or mitigating factors. We note, however, that the repeated failure on the part of the accused to respond to the inquiries of the Bar and the LPRC is a strong aggravating factor.
 
 Miles,
 
 324 Or at 222.
 

 A mitigating factor is the absence of evidence of any prior discipline. ABA Standard 9.32(a). The only other possible mitigating factor is that the accused may have been suffering from a mental disability or impairment at the time of her misconduct. ABA Standard 9.32(h). The record contains a letter dated January 13, 1992, from James Yandell, M.D., Ph.D., in which he opines that the accused suffers from “anxiety and depression of sufficient degree to incapacitate her
 
 *294
 
 from the practice of law.” The accused’s professional misconduct occurred in March and June 1993. We infer from the record that the accused was suffering from that condition at the times that she committed the ethical violations at issue here. We find that to be a mitigating factor.
 

 ABA Standard 5.11 provides that disbarment is generally appropriate when:
 

 “(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, * * *; or
 

 “(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer’s fitness to practice.”
 

 Similarly, ABA Standard 6.1 provides that, in the absence of mitigating factors,
 

 “[d]isbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.”
 

 In lawyer discipline cases involving dishonesty, this court has ordered sanctions ranging from six-month suspensions to disbarment.
 
 See In re Benson,
 
 317 Or 164, 854 P2d 466 (1993) (six-month suspension for assisting client in preparation of fraudulent documents);
 
 In re Hawkins,
 
 305 Or 319, 751 P2d 780 (1988) (disbarment for filing of false affidavit and using false evidence);
 
 In re Brown,
 
 298 Or 285, 692 P2d 107 (1984) (two-year suspension for preparation of false affidavit).
 

 In this case, it is only the mitigating factor that the accused was suffering from a mental disability or impairment at the time of her misconduct that leads us to select a sanction less than disbarment. We conclude that the circumstances warrant a two-year suspension. BR 8.1 provides that a lawyer who has been suspended for misconduct for a period
 
 *295
 
 of more than six months, and who desires to resume the practice of law, shall be reinstated only on formal application and compliance with the Rules of Procedure in effect at the time of such application. If the accused applies for reinstatement at the end of her suspension, the Bar will then be in a position to determine whether the accused’s mental condition is such as to permit her to practice law.
 
 See Miles,
 
 324 Or at 225 (requiring the accused in that case to explain certain matters before being allowed to resume practice).
 

 The accused is suspended from the practice of law for a period of two years commencing on the effective date of this decision.
 

 [1]
 

 DR 1-102(A) provides in part:
 

 “It is professional misconduct for a lawyer to:
 

 »‡ ‡ ‡ ‡ ‡
 

 “(2) Commit a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness or fitness to practice law;
 

 “(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 

 “(4) Engage in conduct that is prejudicial to the administration of justice!.]”
 

 See
 
 Peter R. Jarvis and Bradley F. Tellam,
 
 The Dishonesty Rule
 
 — A
 
 Rule With a Future,
 
 74 Or L Rev 665 (1995) (discussing scope and limitations of DR 1-102(A)(3)
 
 (former
 
 DR 1-102(A)(4))).
 

 [2]
 

 DR 7-102(A)(5) provides:
 

 “In the lawyer’s representation of a client or in representing the lawyer’s own interests, a lawyer shall not:
 

 *
 

 “(5) Knowingly make a false statement of law or fact.”
 

 [3]
 

 DR 1-103(C) provides:
 

 “A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege.”
 

 [4]
 

 BR 5.8(a) provides in part:
 

 “If an accused lawyer fails to resign or file an answer to a formal complaint within the time allowed by these rules, or if an accused lawyer fails to appear at a hearing set pursuant to BR 2.4(h), the trial panel may enter an order in the record finding the accused in default under this rule. The trial panel may thereafter deem the allegations in the formal complaint to be true. The trial panel shall thereafter proceed to render its written opinion based on the formal complaint, or at the discretion of the trial panel, after considering evidence or legal authority limited to the issue of sanction.”
 

 [5]
 

 See In re Schaffner,
 
 323 Or 472, 481, 918 P2d 803 (1996) (failure to appear before trial panel does not constitute violation of DR 1-103(0).
 

 [6]
 

 ORS 162.065(1) provides:
 

 “A person commits the crime of perjury if the person makes a false sworn statement in regard to a material issue, knowing it to be false.”
 

 Under the Family Abuse Prevention Act, in effect at the time that the accused filled out the petition, the accused could not have obtained an
 
 ex parte
 
 restraining order against Wittemyer unless she alleged that she currently was cohabiting with him or had cohabited with him within two years of the filing of the petition.
 
 See former
 
 ORS 107.705 (1) and (2) (1991) (definitions of “abuse” and “family or household
 
 *291
 
 members”);
 
 former
 
 ORS 107.710(1) (1991) (victim of “abuse” may petition for restraining order). Her statement to that effect, therefore, was a
 
 material
 
 misrepresentation.
 

 [7]
 

 A lawyer’s duty to cooperate with a disciplinary investigation is subject to the exercise of any applicable right or privilege. DR 1-103(0. No such claim was made in this case.