Argued and submitted November 10, 1999, accused suspended for four years
August 17, 2000

# In re Complaint as to the Conduct of
## WILLIAM M. PARKER,
*Accused.*

(OSB 97-184, 98-4, 98-36, 98-45; SC S46496)

9 P3d 107

542

William M. Parker, Kirkland, Washington, argued the cause and filed the brief *in propria persona*.

Jane E. Angus, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) filed an amended complaint against William M. Parker (the accused), charging him with violating the Code of Professional Responsibility Disciplinary Rule (DR) 1-102(A)(3) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1-102(A)(4) (prohibiting conduct prejudicial to administration of justice), DR 1-103(C) (four counts) (requiring cooperation with disciplinary investigation), DR 2-110(A) (prohibiting withdrawal unless lawyer takes steps to avoid foreseeable prejudice to client), DR 6-101(B) (four counts) (prohibiting neglect of legal matter), DR 7-101(A)(2) (three counts) (prohibiting failure to carry out contract of employment), and DR 9-101(C)(4) (requiring prompt payment or delivery of client's property or money).

The accused filed no answer and made no other appearance. A trial panel of the Disciplinary Board entered an order of default. Accordingly, we deem the Bar's allegations to be true. *See In re Bourcier*, 325 Or 429, 431, 939 P2d 604 (1997) (*Bourcier II*) (so stating under similar circumstances).

Following entry of the order of default, the two-member trial panel held a hearing on the issue of sanction. Bar Rule of Procedure (BR) 5.8(a). At that hearing, a number of witnesses testified, including several of the accused's former clients and a lawyer involved in the investigation of the accused on behalf of a Local Professional Responsibility Committee (LPRC). The trial panel imposed on the accused a five-year suspension from the practice of law.[1] In this court, the accused argues for no more than a two-year suspension. The Bar argues for a five-year suspension. For the reasons

---

[1] The trial panel, in its written opinion, stated that it "must *recommend* that the Accused be suspended for a period of five years." (Emphasis added.) Under the Bar Rules of Procedure, however, a trial panel has a duty to *impose* a sanction. BR 2.4(i) (imposing on trial panel duty of publishing written opinion that contains "a disposition"); BR 6.1(a) (providing that "dispositions or sanctions * * * shall include," *inter alia*, reprimand, suspension, or disbarment). Properly stated then, the trial panel in this case *imposed* a five-year suspension on the accused. BR 10.1; *see also In re Griffith*, 304 Or 575, 577 n 1, 748 P2d 86 (1987) (stating that trial panel "makes decisions and not recommendations").

that follow, we conclude that a four-year suspension is the appropriate sanction.

At the outset, we note that the accused acknowledges that, with one exception, he committed the charged violations.[2] We therefore limit our recitation of the facts to those that provide a context for our determination of the appropriate sanction.

■ The accused's misconduct arose out of his neglect of his law practice between February 1997 and May 1998. Due to his involvement in an out-of-state business, the accused was absent from his Portland law office for days and weeks at a time. He repeatedly failed to respond to his clients' messages and failed to take appropriate action on their behalves. For example, the accused failed to prepare for trial and to communicate with his client in a case in which his client was the plaintiff. Ultimately, the accused agreed to dismiss the case with prejudice without consulting his client. In another case, a client had retained the accused to pursue a personal injury claim on behalf of the client's 12-year-old daughter. Because the accused failed actively to pursue her case, that client eventually terminated the accused's employment, after experiencing mental anguish. She then retained a new lawyer and asked for her client file, but the accused did not respond to that request. In a third case, the accused's client settled with the opposing party while the case was pending before the Court of Appeals. The accused, however, failed to execute settlement documents that the opposing lawyer sent to him for signature. Ultimately, the opposing lawyer had to procure an order from the Court of Appeals requiring the accused to execute the documents. The order provided that, if the accused failed to execute the documents, the judgment would be vacated and the appeal dismissed. The accused failed to comply with that order, and the Court of Appeals instructed the circuit court to dismiss the complaint. Finally, the accused failed to respond to several requests from another client that he modify a trust instrument that he had

---

[2] In this court, the accused disputes that he violated DR 1-102(A)(3), which prohibits conduct involving misrepresentation. As noted, however, the accused allowed a default to be entered against him, and we deem true the Bar's allegations. Accordingly, we do not consider the accused's argument that he did not knowingly engage in misrepresentation.

prepared for the client, for which trust the accused served as trustee. Eventually, that client asked that the accused withdraw as trustee. The accused did so, but only after considerable unnecessary correspondence.

By early 1998, the accused's office telephone was disconnected, and, because the accused had failed to pay his office rent, his landlord instituted a successful forcible entry and detainer action. The accused never notified his clients of a forwarding address or new telephone number. In June 1998, the Professional Liability Fund (PLF) took possession of all the accused's files. Four complaints were filed against the accused with the Bar regarding his conduct, and the accused failed to respond to most of the Bar's resulting inquiries. With respect to two of the four complaints, the accused eventually responded. In one of those responses, the accused misrepresented facts to the Bar. When asked for additional information regarding his responses, he again failed to respond. Similarly, the accused failed to respond to many of the inquiries of the LPRC.

In determining the appropriate sanction for ethical misconduct, this court looks both to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and to this court's case law. *In re Martin*, 328 Or 177, 191, 970 P2d 638 (1998). This court first considers three factors: the ethical duty violated, the lawyer's mental state, and the potential or actual injury caused by the misconduct. ABA Standard 3.0; *In re Howser*, 329 Or 404, 412, 987 P2d 496 (1999). We then examine any aggravating or mitigating factors. ABA Standard 3.0; *In re Devers*, 328 Or 230, 241, 974 P2d 191 (1999). Finally, we consider Oregon case law. *Id.* at 241.

The accused violated several ethical duties. First, he violated his duty of diligence to his clients when he repeatedly neglected legal matters that his clients had entrusted to him. ABA Standard 4.4. That duty requires that a lawyer "act with reasonable diligence and promptness in representing a client." *Id.* Second, the accused violated his duty to the public to maintain his personal integrity when he misrepresented facts to the Bar in his responses to the Bar's inquiries.

ABA Standard 5.1. That duty prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Finally, the accused violated his duty to the profession when he failed to withdraw promptly and properly from representation. ABA Standard 7.0.

As to the accused's mental state, the Bar argues that the accused acted either intentionally or knowingly. The accused argues that he acted negligently. "Intent" is "the conscious objective or purpose to accomplish a particular result." ABA Standards at 7. "Knowledge" is "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." *Id.* "Negligence" is

> "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation."

*Id.*

■ We conclude that the accused acted knowingly. The record shows that the accused's secretary in his Portland office sent him all his mail and telephone messages daily. She repeatedly reminded him of his obligations. The accused easily could have informed his clients that he was unable to represent them and that they should retain other counsel. Additionally, the accused failed to respond to inquiries from the Bar, notwithstanding numerous requests for information sent to the accused's office and, on discovery of his out-of-state address, to that address. Those facts and the reasonable inferences drawn from them lead us to conclude that the accused was fully aware of his obligations to his clients and to the Bar, and that he knowingly failed to take appropriate action. *See Bourcier II*, 325 Or at 434 (finding that accused lawyer acted knowingly when lawyer failed to respond to client's telephone messages and to Bar's letters).

■ We turn to the injury that the accused's misconduct caused. First, by agreeing to dismiss with prejudice a case without consulting his client, the accused caused that client actual harm, because the client was precluded from pursuing his claim against the other party. Second, the accused caused

actual injury to the client whose personal injury case the accused failed to pursue actively. Medical treatment for that client's daughter and the resolution of the claim were delayed. Third, the accused caused actual injury to the legal system when he failed to respond to orders of the Court of Appeals. Because the accused failed to execute timely the settlement documents, the court unnecessarily expended significant time and resources. Finally, the accused caused actual injury to the legal profession and the public when he failed to respond to the requests for information from the Bar and the LPRC. *See In re Schaffner*, 325 Or 421, 427, 939 P2d 39 (1997) (*Schaffner II*) (so stating under similar circumstances). The accused's failure to respond hampered the disciplinary process by delaying resolution of the complaints against the accused.

In light of the duties violated and the mental state of the accused, we determine that the accused's misconduct implicates several ABA Standards. ABA Standard 4.41(c) provides:

"Disbarment is generally appropriate when:

"* * * * *

"(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client."

ABA Standard 4.42 provides:

"Suspension is generally appropriate when:

"(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

"(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."

Thus, the ABA Standards suggest in the abstract that disbarment could be appropriate under the facts of this proceeding. But this proceeding is not considered in the abstract; we also consider this court's case law in determining the proper sanction. Before looking to our case law, however, we turn to the fourth factor, *viz.*, aggravating and mitigating circumstances.

██ ██ The record reveals several aggravating factors, including a pattern of misconduct, multiple offenses over a substantial period of time, and a failure to respond to or cooperate with the Bar's investigations. ABA Standards 9.22(c), (d), and (e). The accused also has substantial experience in the practice of law, having been admitted to the Bar in 1974. ABA Standard 9.22(i). In mitigation, there is no indication in the record of prior discipline.[3] ABA Standard 9.32(a). Additionally, the accused expresses what appears to be genuine remorse over his conduct. ABA Standard 9.32(l).

We next consider this court's case law. In *Schaffner II*, this court imposed a two-year suspension on a lawyer who neglected a client matter, failed to deliver client property, and failed to respond to the Bar's inquiries. *Schaffner II*, 325 Or at 428. Specifically, the accused lawyer in *Schaffner II* promised his client that he would send a demand letter on the client's behalf. The client gave several documents concerning the case to the accused lawyer. The lawyer never sent the demand letter. Over the next ten months, the lawyer failed to communicate with the client or respond to the client's messages. Several aggravating factors were present in *Schaffner II*, including a pattern of misconduct, multiple offenses, substantial experience in the practice of law, and a prior disciplinary record. *Id.* at 427.

In *In re Sousa*, 323 Or 137, 915 P2d 408 (1996), this court disbarred a lawyer who neglected four client matters, failed to cooperate with the Bar on those four matters, engaged in dishonest conduct, collected clearly excessive fees, failed to carry out his employment contract, and failed to render an accounting. Briefly, the lawyer in *Sousa* failed to file a certificate of lost title for a client, failed to act on two clients' traffic charges, failed to respond to a motion to dismiss filed against another client, and failed to file a brief in the Court of

---

[3] In its brief, the Bar states that the accused was admonished in 1990 for violating DR 7-105(A), which prohibits threatening criminal prosecution to gain advantage in a civil matter. The record does not contain a letter of admonition, and, at oral argument, the parties did not agree on the existence of a letter. Additionally, the opinion of the trial panel states that the accused "has no prior record of discipline." Accordingly, we do not consider the Bar's assertion that the accused has a prior disciplinary record. *See* BR 10.6 (requiring this court to consider discipline cases *de novo* upon the record).

Appeals on his client's behalf. The lawyer also represented to a client that he was licensed to practice law in Colorado when he was on inactive status there. *Id.* at 141. Additionally, he collected nonrefundable retainer fees from two clients, but failed to take action on their matters and failed to refund any portion of the fees. *Id.* This court determined that the lawyer in *Sousa* caused actual injury to three of his clients. In particular, one client was ordered to pay $1,141.50 in costs, because the accused failed to object or respond to a motion for fees and costs. Finally, there were four aggravating factors (pattern of misconduct, multiple offenses, substantial experience in the practice of law, and acting with a dishonest and selfish motive) and no mitigating factors. *Id.* at 146.

In *In re Bourcier*, 322 Or 561, 909 P2d 1234 (1996) (*Bourcier I*), this court imposed a three-year suspension (the maximum possible suspension at the time) on a lawyer who neglected a client matter; engaged in conduct involving dishonesty, deceit, and misrepresentation; engaged in conduct prejudicial to justice; knowingly made a false statement of fact; and failed to cooperate with the Bar and the LPRC. *Id.* at 567-68. In *Bourcier I*, the accused lawyer represented the defendant on a criminal appeal. After filing two motions for extension of time in the Court of Appeals, the lawyer moved to dismiss the appeal, stating that he had reviewed the record, had consulted with his client, and determined that no meritorious issue existed. In fact, the lawyer had not consulted with his client regarding the motion to dismiss. Moreover, the lawyer failed to keep his client informed of any of the filings or other developments in the case. Thereafter, the lawyer petitioned for and received attorney fees. In that petition, the lawyer represented that he had spoken with his client over the telephone on several occasions. That representation was false. *Id.* at 567. A number of aggravating factors were present in *Bourcier I*, including a prior disciplinary record for similar misconduct, a selfish and dishonest motive, and untruthfulness to the court. There were no mitigating factors.

Finally, in *In re Recker*, 309 Or 633, 789 P2d 663 (1990), this court imposed a two-year suspension on a lawyer

who neglected two client matters, failed to carry out a contract of employment, engaged in conduct involving misrepresentations, and failed to cooperate with disciplinary investigations. *Id.* at 641. In the first client matter, the client gave the accused lawyer her existing will and paid a $100 fee in exchange for the lawyer's services in drafting a new will. The lawyer failed to draft the will and failed to return the client's messages, which the client left over a four-month period. *Id.* at 636. In the second client matter, the lawyer represented a defendant in a criminal case. That client was released to a supervised release program. The lawyer failed to communicate with her client and failed to notify her client of a court date, despite many telephone calls from the release program on the client's behalf. On the scheduled court date, the client failed to appear. The lawyer told the judge that the client had failed to maintain contact with the lawyer, when the opposite was true. *Id.* at 637.

■    *Schaffner II*, *Sousa*, *Bourcier I*, and *Recker* involved conduct and circumstances similar to the present proceeding: All involved neglect of client matters and failure to cooperate with the Bar.[4] This proceeding, however, involves conduct more serious—quantitatively and qualitatively—than *Schaffner II*, *Bourcier I*, and *Recker*. But, the misconduct here is not as severe as the conduct in *Sousa*, as the lawyer in *Sousa* twice had collected clearly excessive fees. The accused in this proceeding neglected *four* different client matters. In one case, the accused's conduct resulted in his client's case being dismissed with prejudice. The accused failed to respond

---

[1] *In re Schaffner*, 323 Or 472, 918 P2d 803 (1996) (*Schaffner I*) is yet another proceeding involving neglect of a client matter and a failure to cooperate. That case, however, is distinguishable from the proceeding at bar. In *Schaffner I*, the accused lawyer initially had failed to respond to the Bar's and the LPRC's inquiries. Eventually, however, the lawyer responded to the Bar. The Bar deposed the lawyer, and the Bar and the lawyer began settlement negotiations. As a sanction for those two violations, this court imposed a 120-day suspension. The court specified that a 60-day suspension was appropriate for knowingly neglecting the accused's clients' case and another 60-day suspension was justified for failing to cooperate with the Bar. *Id.* at 481.

. In the present case, the extent of the accused's failure to cooperate is more severe than in *Schaffner I*. The lawyer in *Schaffner I* eventually cooperated with the Bar. In this proceeding, the accused's responses were very few, incomplete, and contained misrepresentations. The accused's failure to cooperate with the Bar demonstrates a serious and sustained disregard for the disciplinary rules.

to the Bar's inquiries in two of those matters, and, as already noted, his responses to the other two inquiries were few, late, incomplete, and contained misrepresentations. In previous cases, this court has expressed its view that the failure to cooperate with a disciplinary investigation, standing alone, is a serious ethical violation. *See, e.g., Bourcier II*, 325 Or at 434 (so stating); *In re Miles*, 324 Or 218, 222-23, 923 P2d 1219 (1996) (same). That failure to cooperate, in addition to the number of clients whom the accused neglected, suggests that the sanction in this proceeding should be more severe than the two- to three-year suspensions imposed in *Schaffner II*, *Bourcier I*, and *Recker*. The difference between this proceeding and *Sousa*, as noted above, suggests that disbarment is not warranted.[5]

The trial panel, in deciding on a five-year suspension, relied heavily on this court's decision in *Bourcier II*. That case, however, is distinguishable from this proceeding. In *Bourcier II*, the accused was disbarred for neglecting a client matter and failing to cooperate with the resulting disciplinary investigation. *Id.* at 431. In its analysis of the sanction in *Bourcier II*, however, this court deemed significant the prior disciplinary history of the accused. In September 1993, the accused in *Bourcier II* had received a 60-day suspension for neglecting a client matter. In February 1996, this court had imposed a three-year suspension on the accused for failing to communicate with and advise his client, and failing to respond to the Bar's inquiries. *Bourcier I*, 322 Or at 571. Immediately after this court decided *Bourcier I*, the Bar requested the accused's response to another complaint regarding his conduct—the complaint that eventually became the subject of *Bourcier II*. The accused failed to respond to those requests for information. Thus, this court found that the accused's contemporaneous continuation of misconduct for which he already had been sanctioned was particularly serious and ordered the accused disbarred. *Bourcier II*, 325 Or at 436-37.

In the present case, the aggravating factors that exist are serious, but the pattern of misconduct is not as

---

[5] The Bar does not seek disbarment in this case.

extreme as the conduct in *Bourcier II*. Additionally, mitigating factors, absent in *Bourcier II*, are present here. Accordingly, the trial panel's heavy reliance on *Bourcier II* was misplaced.

■ The purpose of a lawyer disciplinary proceeding is not to punish the lawyer, but to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely to discharge properly their professional duties to clients, the public, the legal system, and the profession. ABA Standards at 7; *In re Wittemyer*, 328 Or 448, 459, 980 P2d 148 (1999). After considering all the relevant factors and this court's case law, we conclude that a four-year suspension is the appropriate sanction in this proceeding.

The accused is suspended from the practice of law for a period of four years, commencing 60 days from the date of filing of this decision.