Argued and submitted January 10, accused suspended for three years
June 28, 2001

In re Complaint as to the Conduct of

DAVID R. KLUGE,
*Accused.*

(OSB 98-22; SC S47247)

27 P3d 102

David R. Kluge, Portland, argued the cause and filed the brief *in propria persona*.

Jeffrey D. Sapiro, Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, Riggs and De Muniz, Justices.*

PER CURIAM

---

* Kulongoski, J., resigned June 14, 2001, and did not participate in the consideration or decision of this case.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) filed a complaint alleging that the accused violated DR 1-102(A)(3) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation) (two counts); DR 3-101(B) (prohibiting unlawful practice of law); DR 5-102(C) (requiring lawyer to withdraw from representation if lawyer will be witness and lawyer's testimony will or might be prejudicial to client); and DR 7-102(A)(5) (prohibiting lawyer from knowingly making false statement of law or fact). The accused failed to file a timely answer, and a trial panel of the Disciplinary Board deemed the allegations in the complaint to be true. BR 5.8(a).[1] The trial panel concluded that the accused had committed the alleged violations and, after hearing evidence on the issue of sanction, imposed an 18-month suspension.

■ *De novo* review by this court is automatic. ORS 9.536(2), (3). Because the accused defaulted, we deem the allegations in the complaint to be true. *In re Parker*, 330 Or 541, 543, 9 P3d 107 (2000). As discussed below, we conclude that those allegations establish that the accused violated DR 1-102(A)(3), DR 3-101(B), DR 5-102(C), and DR 7-102(A)(5). We also conclude that the appropriate sanction is a three-year suspension.

The Bar's complaint states the following facts. In December 1994, the accused and his wife filed a petition with the Yamhill County Board of Equalization (Board), contesting an increase in the assessed value of real estate that they owned. The accused also submitted a real estate appraisal,

---

[1] BR 5.8(a) provides, in part:

"If an accused lawyer fails to resign or file an answer to a formal complaint within the time allowed by these rules, * * * the trial panel may enter an order in the record finding the accused in default under this rule. The trial panel may thereafter deem the allegations in the formal complaint to be true. The trial panel shall thereafter proceed to render its written opinion based on the formal complaint, or at the discretion of the trial panel, after considering evidence or legal authority limited to the issue of sanction. * * * Following entry of an order of default, the accused shall not be entitled to further notice in the disciplinary proceeding under consideration, except as may be required by these rules or by statute. The trial panel shall not, absent good cause, continue or delay proceedings due to an accused's failure to answer or appear."

prepared and signed by Wogan, that supported the petition. In April 1995, the Appraiser Certification and Licensure Board (ACLB) charged Wogan with statutory or administrative violations relating to the appraisal. The accused represented Wogan regarding the ACLB charges from 1995 to 1998.

On July 21, 1995, the accused deposed Riddell, the administrator of ACLB, regarding the Wogan matter. The accused told ACLB's counsel that the accused was a notary public. That representation was false. The accused then administered an oath to Riddell before the deposition. When he engaged in that conduct, the accused knew that he was not a notary public and could not administer an oath.

Counsel for ACLB notified the accused in July 1995 that he intended to call the accused as a witness in the contested case hearing concerning Wogan's appraisal. It was apparent that the accused's testimony would or might be prejudicial to Wogan, but the accused did not withdraw from the representation. At the contested case hearing on November 27, 1995, ACLB's counsel called the accused to testify. The accused testified to a limited extent but refused to answer any material questions, claiming attorney-client privilege.

Between 1995 and 1998, the accused engaged in the private practice of law by representing Wogan. The Oregon State Bar requires active members who engage in the private practice of law to carry professional liability insurance through the Professional Liability Fund (PLF). The accused did not carry PLF insurance from 1995 to 1998. In each of those years, the accused falsely represented to the PLF that he was exempt from the PLF requirement because he did not engage in the private practice of law in Oregon. The accused knew that his representations to the PLF were false when he made them.

On review, the accused first argues that the Bar failed to prove that he violated any rules because the facts alleged in the complaint are not supported by clear and convincing evidence. *See* BR 5.2 (setting that standard of proof). As noted, however, the accused defaulted. The trial panel, exercising the authority granted in BR 5.8(a), deemed the

allegations in the Bar's complaint to be true. On *de novo* review, this court agrees with that decision of the trial panel. Accordingly, this court also deems the allegations in the complaint to be true. *See* BR 10.6 (authorizing court, on *de novo* review, to adopt, modify, or reject trial panel decision in whole or in part). The accused forfeited his opportunity to require the Bar to prove its allegations in a hearing when he failed to file a timely answer to the Bar's complaint.

Next, the accused argues that, even if the court deems the allegations to be true, the alleged acts and omissions do not constitute rule violations. On *de novo* review, we must determine whether the alleged facts, which we deem to be true, establish the violations stated in the complaint.

The first cause of complaint alleges that the accused violated DR 1-102(A)(3) and DR 7-102(A)(5) by representing that he was a notary public, when he knew that he was not. DR 1-102(A)(3) provides that it is professional misconduct for a lawyer to "[e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation." DR 7-102(A)(5) prohibits lawyers from "[k]nowingly mak[ing] a false statement of law or fact." The accused contends that the allegations fail to demonstrate a violation because the Bar did not allege that the accused's misrepresentation was material. The accused asserts that the misrepresentation was trivial.

"Misrepresentation" under DR 1-102(A)(3) includes both affirmative misstatements and nondisclosure of material facts. *In re Brandt*, 331 Or 113, 138, 10 P3d 906 (2000). To violate DR 1-102(A)(3) by misrepresentation, a lawyer must know that the lawyer's statement is a misrepresentation and that it is material. *In re Claussen*, 331 Or 252, 261, 14 P3d 586 (2000). A misrepresentation is material if it involves information that would or could significantly influence the hearer's decision-making process. *In re Gustafson*, 327 Or 636, 649, 968 P2d 367 (1998).

The allegations in the Bar's complaint, and the reasonable inferences drawn from those allegations, establish that the accused's misrepresentation was material and that the accused knew that that misrepresentation was material. The complaint alleges that the accused lied about

his notary status, administered an oath to the deponent, and then took her deposition. If Riddell and ACLB's attorney had known that the accused was not a notary, then they would have known that the purported deposition was legally defective. *See* ORCP 38 A(1) (oath or affirmation administered to deponent by officer authorized to administer oaths by Oregon law, or by person specially appointed by court, shall precede depositions in Oregon). That information could or would have influenced their decision to proceed with the deposition.

■■ Similarly, the accused asserts that the first cause of complaint fails because it does not allege that anyone relied on the misrepresentation. This court has not required reliance as an element of fraud under DR 1-102(A)(3). *See In re Claussen*, 331 Or at 261 (so holding). Applying the logic of *Claussen* here, we see no reason to require proof of reliance as an element of a charge of misrepresentation under DR 1-102(A)(3).[2] Therefore, the accused's legal premise is incorrect. It follows from the foregoing that the accused violated DR 1-102(A)(3).

■ We turn to the alleged violation of DR 7-102(A)(5), which prohibits a lawyer from knowingly making a false statement of law or fact "[i]n the lawyer's representation of a client or in representing the lawyer's own interests." The accused again asserts that the Bar's complaint fails to allege that he misrepresented a material fact. That argument is not well founded. The complaint alleges that the accused misrepresented his notary status to ACLB's attorney during the accused's representation of Wogan and "knew the representation to be false when he made it." Those allegations establish the materiality of the accused's misrepresentation. Therefore, we conclude that the accused violated DR 7-102(A)(5).

■ The second cause of complaint also alleged that the accused violated DR 5-102(C) by failing to withdraw from representing Wogan in the ACLB proceeding. DR 5-102(C) provides:

---

[2] Likewise, reliance is not necessary to establish a violation of DR 7-102(A)(5). *See In re White*, 311 Or 573, 586, 815 P2d 1257 (1991) (the question whether lawyer's false statement to court actually misled was irrelevant to whether lawyer violated DR 7-102(A)(5)).

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a member of the lawyer's firm may be called as a witness other than on behalf of the lawyer's client, the lawyer may continue the representation until it is apparent that the lawyer's or firm member's testimony is or may be prejudicial to the lawyer's client."

The allegations in the complaint establish a violation of DR 5-102(C).

■ In the third cause of complaint, the Bar alleged that the accused violated DR 3-101(B) by practicing law "in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction." Specifically, the complaint alleges that the accused violated ORS 9.080(2)(a) and sections 15.1 and 15.2 of the Bar's bylaws by engaging in the private practice of law without professional liability insurance from the PLF. ORS 9.080(2)(a) authorizes the Bar to require its active members "engaged in the private practice of law whose principal offices are in Oregon" to carry professional liability insurance from the PLF and to assess from those lawyers contributions to the professional liability fund. Oregon State Bar Bylaw 15.1 generally discusses the formation of the PLF. Bylaw 15.2 provides that the PLF shall possess the powers and authorities delegated to it by the Bar's Board of Governors, including the authority to carry out the provisions of ORS 9.080.

The accused suggests that the enumerated provisions regulate the PLF, not lawyers, so he could not have violated those provisions and, it follows, could not have violated DR 3-101(B). He also contends that ORS 9.080 and Bylaws 15.1 and 15.2 might not be the type of "regulations" covered by DR 3-101(B). Finally, he argues that he did not violate the PLF requirements because the PLF's plan excludes his alleged representation of Wogan from coverage.[3]

---

[3] For example, the accused asserts that, if the court deems the allegations in the complaint to be true, then his representation of Wogan was a knowingly wrongful act, and such acts are not covered by the plan. *See* PLF Claims Made Plan § I(3)(b) (excluding coverage for wrongful conduct).

The Bar argues that the accused cannot raise his arguments regarding the application of DR 3-101(B) now, because he did not raise them in a timely manner before the trial panel. The Bar is correct. Therefore, we confine our review solely to the question whether the allegations state a cause of complaint under DR 3-101(B).

The "regulations of the profession" in Oregon, which ORS 9.080 authorizes and Bylaws 15.1 and 15.2 implement, require every lawyer engaged in the private practice of law in Oregon to carry professional liability insurance. Practicing law without professional liability coverage violates regulations of the profession encompassed by DR 3-101(B). We conclude that the complaint establishes that the accused violated DR 3-101(B).

■ The fourth cause of complaint alleged that the accused violated DR 1-102(A)(3) from 1995 to 1998 by representing to the PLF that he was entitled to the exemption from paying for PLF coverage because he did not engage in the private practice of law, when, in fact, he did. The trial panel declined to find that the accused violated DR 1-102(A)(3) in 1995, because, according to the complaint, the accused's misrepresentation began in May 1995, when he began to represent Wogan. According to a document that the Bar introduced at the sanctions hearing, the accused submitted his exemption request for 1995 before he began to represent Wogan.

We reject that reasoning. Due to the accused's default, we accept as true the allegation in the complaint that the accused's misrepresentations to the PLF in each of the years 1995, 1996, 1997, and 1998 "were false when he made them." That fact establishes the accused's violation of DR 1-102(A)(3) during each year, including 1995. We may (and do) consider the document on which the trial panel relied in determining the appropriate sanction, but not to relieve the accused from the disciplinary rule violation that the alleged facts establish. *See In re Staar*, 324 Or 283, 288, 924 P2d 308 (1996) (following that analysis). The accused's misrepresentations to the PLF during the years 1995 through 1998 violated DR 1-102(A)(3).

■ The accused also makes various "counterclaims" against the Bar and its employees, alleging disciplinary violations. The Bar Rules establish procedures for submitting and investigating disciplinary complaints. *See* BR 2.5 (describing complaint procedures). The accused has invoked those procedures to lodge complaints against various individuals associated with this proceeding. The Bar's rules do not

permit the accused to pursue his complaints against other lawyers as "counterclaims" in the Bar's proceeding against him. We decline to consider the accused's "counterclaims." The accused's additional assignments of error do not merit discussion.

We turn to a consideration of the appropriate sanction. To determine the sanction in a disciplinary proceeding, this court looks to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and Oregon case law. *In re Parker*, 330 Or at 545. We first ascertain the appropriate sanction by considering: (1) the duty violated; (2) the accused's mental state; and (3) the actual or potential injury caused by the misconduct. ABA Standard 3.0; *In re Meyer(I)*, 328 Or 211, 216, 970 P2d 652 (1999). The court next decides whether any aggravating or mitigating circumstances are present and then adjusts the sanction accordingly. ABA Standard 3.0; *In re Meyer (I)*, 328 Or at 216-17. Finally, we consider the sanction in light of Oregon case law. *In re Devers*, 328 Or 230, 241, 974 P2d 191 (1999).

The accused violated his duty to his client, Wogan, by continuing to represent her after he knew that he would be called as a witness in her matter. ABA Standard 4.0. He violated his duty to the public by engaging in conduct that involved dishonesty, fraud, deceit, or misrepresentation, and by practicing law without the proper liability coverage. ABA Standard 5.0. The accused also violated his duty to the profession by making false representations to opposing counsel and the PLF. ABA Standard 7.0.

The Bar argues that, when the accused committed each violation in this matter, he acted intentionally. Under the ABA Standards, a lawyer acts intentionally when the lawyer proceeds with "the conscious objective or purpose to accomplish a particular result." ABA Standards at 7. The trial panel concluded that the accused acted intentionally when he misrepresented his status as a notary public, practiced law without PLF coverage, and made false certifications about his eligibility for an exemption to the PLF. The trial panel determined that the accused acted with knowledge when he refused to withdraw from representing Wogan. *See*

ABA Standards at 7 (defining "knowledge" as "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result").

Two premises underlie the Bar's argument regarding the accused's mental state. The first is that the facts alleged in the Bar's complaint, which the court deems to be true due to the accused's default, describe "the acts or omissions of the accused," BR 4.1(c), that demonstrate the asserted misconduct, but those allegations do not establish the accused's state of mind for purposes of determining the appropriate sanction. The second is that, in a post-default sanctions proceeding under BR 5.8(a), the Bar may prove the actual state of mind that accompanied the accused's misconduct, such as "intent," even if the complaint alleged either a less culpable state of mind, such as "knowledge," or no specific mental element at all.

To date, this court has not discussed directly the correctness of those premises. *See In re Koliha*, 330 Or 402, 408-09, 9 P3d 102 (2000) (concluding, where accused lawyer had defaulted and Bar's complaint specified no particular mental state, that accused lawyer had committed some violations "intentionally" and another "knowingly"); *In re Crist*, 327 Or 609, 615-16, 965 P2d 1023 (1998) (concluding, where accused lawyer had defaulted and Bar's complaint specified no particular mental state, that accused lawyer had committed some violations "knowingly" and other "intentionally"). In *Staar*, the Bar charged a lawyer with violating DR 1-102(A)(2), (3), and (4), and DR 7-102(A)(5) for making false statements in a petition for a restraining order. 324 Or at 285. The complaint alleged that the lawyer "knew" that her statements were false when she made them and that she had "knowingly [made] a false statement of fact" in violation of each of the disciplinary rules cited above. After the accused defaulted, this court deemed the alleged facts to be true. In determining the appropriate sanction, this court found, in accordance with the facts deemed to be true, that the accused lawyer made false statements of fact "knowing them to be false." *Id.* at 291 (citing Standards at 7 (defining "knowledge")). *Id.* The court's opinion in *Staar* does not address

whether the Bar was entitled to prove, in a sanctions proceeding, that the accused acted with a more serious, intentional state of mind. We address that question now, because of its importance to the Bar and to lawyers facing professional discipline.

The disciplinary rules at issue in this case do not uniformly identify the mental state that must accompany proof of a violation. For example, DR 1-102(A)(3) sets out no express mental state element in prohibiting "conduct involving dishonesty, fraud, deceit or misrepresentation." This court, however, has decided in case law that proof of a failure to disclose material information constitutes misrepresentation if "the lawyer had the undisclosed fact in mind and *knowingly* failed to disclose it." *In re Hiller*, 298 Or 526, 532, 694 P2d 540 (1985) (emphasis added). *Hiller* also held that "[a] misrepresentation becomes fraud or deceit when it is intended to be acted upon without being discovered." *Id.* at 533. In that case, the Bar proved that the accused lawyers made misrepresentations with knowledge of the true facts, but failed to prove that they acted intentionally. Accordingly, the accused lawyers had committed misrepresentation, but not fraud or deceit. *Id.* at 533-34.

The discussion of mental states in *Hiller* identified proof requirements under DR 1-102(A)(3), but not pleading requirements. BR 4.1(c) describes the Bar's obligation in pleading allegations of professional misconduct in a formal disciplinary complaint:

> "A formal complaint shall be signed by the Executive Director, or his or her designee, and shall set forth succinctly the acts or omissions of the accused, including the specific statutes or disciplinary rules violated, so as to enable the accused to know the nature of the charge or charges against the accused. When more than one act or transaction is relied upon, the allegations shall be separately stated and numbered. The formal complaint need not be verified."

BR 4.1(c) requires that the Bar allege the "acts or omissions" of the accused lawyer that constitute violations of the pertinent statutes and disciplinary rules, and the specific statutes and disciplinary rules on which the Bar bases its complaint. The express purpose for requiring the Bar to allege particular

facts is to notify the accused lawyer of "the nature of the charge or charges against the accused."

■■ BR 4.1(c) does not obligate the Bar to plead any fact regarding a charge, including mental state, beyond those that the statutes or disciplinary rules identify.[4] Neither BR 4.1(c) nor any other rule of procedure requires the Bar to allege in the complaint the sanction that the Bar may contend is appropriate or any aggravating or mitigating circumstances, including mental state, on which the Bar may rely in seeking an appropriate sanction.

■ Under BR 5.8(a), if an accused lawyer defaults and the trial panel deems the facts alleged in the Bar's complaint to be true, then the Bar must rely on those facts to establish the accused lawyer's responsibility for the violation of the statutes or disciplinary rules set out in the complaint. The Bar *may* rely on those facts in arguing for a particular sanction. However, BR 5.8(a) also grants discretion to the trial panel, in the event of a default, to consider "evidence or legal authority limited to the issue of sanction." That provision entitles the Bar, at the discretion of the trial panel, to present further evidence regarding the appropriate sanction. Consequently, BR 5.8(a) contemplates that the Bar may present additional evidence regarding the accused's mental state that might differ from that which the facts alleged in the complaint state or imply. Although *Staar* holds that the trial panel may not rely on the Bar's evidence in a sanctions hearing under BR 5.8(a) to relieve a lawyer of responsibility for a charge to which the lawyer has defaulted, 324 Or at 288, BR 5.8(a) allows the trial panel to determine the appropriate sanction by considering evidence admitted in a sanctions

---

[4] As noted, DR 1-102(A)(3) does not set out a mental state requirement. DR 3-101(B), which prohibits a lawyer from "practic[ing] law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction[,]" does not state a required mental element unless, hypothetically, the regulations in question contain mental element requirements. DR 5-102(C), which prohibits a lawyer from acting as a witness in certain circumstances, refers to facts that a lawyer "learns" or that must be "obvious," and that actual or potential prejudice to the client must be "apparent," but the rule otherwise does not state a required mental element. Finally, DR 7-102(A)(5) prohibits a lawyer from *"[k]nowingly* mak[ing] a false statement of law or fact." (Emphasis added.) The term "knowingly" indicates that the mental state of knowledge is the required mental element in a pleading that alleges a violation of that rule.

hearing that the accused acted with a state of mind that is more serious than that indicated by the allegations in the complaint.

The foregoing leads us to agree with the premises, described above, that underlie the Bar's arguments regarding the accused's mental state. We also agree with the Bar, on *de novo* review, that the accused committed each of the alleged violations intentionally.

We next consider the nature of the injury caused by the accused's misconduct. "Injury" includes actual or potential harm to a client, the public, the legal system, or the legal profession. ABA Standards at 6-7. The Bar did not present evidence of actual injury to Wogan, but the potential for injury under the lawyer/witness rule, DR 5-102(c), is substantial. By practicing law without PLF coverage, the accused caused substantial potential harm to the public and other members of the profession, who absorbed the potential costs of the risks that the accused failed to insure. The accused also caused actual harm to Riddell and ACLB's counsel, by inducing them to participate in a legally defective deposition.

The ABA Standards advise that disbarment generally is appropriate when a lawyer engages in noncriminal "intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." ABA Standard 5.11(b). Reprimand generally is appropriate when a lawyer knowingly engages in noncriminal "conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law." ABA Standard 5.13. Suspension generally is appropriate "when a lawyer knowingly engages in conduct that is a violation of a duty owned to the profession and causes injury or potential injury to a client, the public, or the legal system." ABA Standard 7.2. Given the duties violated, the accused's mental state, and the level of injury, we conclude preliminarily that either disbarment or a suspension is warranted.

Several aggravating factors apply. There are multiple offenses, revealing a pattern of dishonesty and misconduct by the accused. ABA Standard 9.22(c), (d). The accused

engaged in a bad-faith obstruction of the disciplinary proceeding. ABA Standard 9.22(e). The accused has refused to acknowledge the wrongful nature of his conduct. ABA Standard 9.22(g). He also has substantial experience in the practice of law, having been admitted in 1978. ABA Standard 9.22(i).

In mitigation, the accused has no prior disciplinary record. ABA Standard 9.32(a). The aggravating factors greatly outweigh that mitigating factor.

Turning to our case law, the sanctions that this court has imposed for violations of DR 1-102(A)(3) and DR 7-102(A)(5) have varied, depending on the nature of the lawyer's dishonesty and the presence of other rule violations. *See, e.g., Gustafson,* 327 Or at 656 (imposing six-month suspension for failing to disclose material information to court); *In re Wyllie,* 327 Or 175, 184, 957 P2d 1222 (1998) (imposing two-year suspension for submitting fraudulent MCLE forms and failing to cooperate with investigation); *In re Morris,* 326 Or 493, 506, 953 P2d 387 (1998) (imposing 120-day suspension for submitting altered documents to court and opposing parties); *In re Porter,* 320 Or 692, 710, 890 P2d 1377 (1995) (imposing 63-day suspension for misrepresenting intentions to opposing counsel); *In re Morin,* 319 Or 547, 566, 878 P2d 393 (1994) (disbarring lawyer who notarized false documents and made misrepresentations); *In re McKee,* 316 Or 114, 133, 849 P2d 509 (1993) (imposing 18-month suspension for conflict of interest, misrepresentations, and other violations); *In re Dinerman,* 314 Or 308, 319, 840 P2d 50 (1992) (imposing 63-day suspension for knowingly signing fraudulent documents); *In re Boardman,* 312 Or 452, 458, 822 P2d 709 (1991) (reprimanding lawyer who made misrepresentation of fact to another lawyer); *In re Hawkins,* 305 Or 319, 751 P2d 780 (1988) (disbarring lawyer who submitted false documents to court that he had notarized).

This court has imposed serious sanctions for violations of DR 3-101(C) by lawyers who practice law while suspended. *See, e.g., Koliha,* 330 Or at 411 (imposing one-year suspension for practicing law while suspended and making misrepresentation); *Devers,* 328 Or at 244-45 (disbarring

lawyer who practiced law while suspended and made misrepresentation in reinstatement application); *In re Jones*, 312 Or 611, 619-20, 825 P2d 1365 (1992) (disbarring lawyer who intentionally practiced law for three months while suspended and knowingly failed to cooperate with the Bar's investigation, among other violations).

Our case law, reviewed above, demonstrates that the court has imposed sanctions ranging from disbarment to a lengthy suspension for analogous misconduct in the practice of law. The conduct of the accused in this case is more serious than that shown in *Gustafson*, *Wyllie*, *Morris*, *Porter*, *Dinerman*, *Boardman*, and *Koliha*, because of the nature and number of the accused's violations. The conduct of the accused is less serious than that shown in *Morin*, *Hawkins*, *Devers* and *Jones*, each of which resulted in disbarment for multiple intentional violations of disciplinary rules or criminal statutes that lead to significant actual injury.

We are persuaded in this case that a lengthy suspension, rather than disbarment, is the appropriate sanction. We rely for that conclusion on the absence of a prior disciplinary record after the accused's long career in law practice. We conclude that a suspension of three years is appropriate.

The accused is suspended from the practice of law for three years, commencing 60 days from the date of filing of this decision.